SOUTHLAND PORTLAND CEMENT CO. v. E. P. MELVIN et al.

Eastern Section. January 31, 1927.

Petition for Certiorari denied by Supreme Court, Oct. 20, 1927.

1. **Injunction. Damages.** Party wrongfully securing the issuance of a writ of injunction is liable for all damages sustained on account of the wrongful issuance of the injunction.

Where parties obtained the issuance of an injunction to restrain the cutting and selling of certain timber and afterwards dismissed their suit, held they were liable for defendants' damages.

2. **Injunction. Evidence.** Evidence held to show defendants were restrained by the order of injunction.

Where plaintiffs sought an injunction against defendant from cutting and selling timber on certain described land and afterwards the bill was dismissed and it was found that the defendants were not cutting timber from the land described in the suit and plaintiffs sought to avoid damages caused by the injunction on the ground that the defendants had not been restrained from cutting timber on other land, held that at the time the suit was filed the question pending was whether the timber was being cut on the land described and the injunction was sufficient to restrain defendants from cutting timber from the land that they were then working on, and that plaintiffs were liable for the damages caused by the injunction.

Appeal from Chancery Court, Cumberland County; Hon. W. R. Officer, Chancellor.

Affirmed.

Haggard, Jennings, Wright & Burn, of Rockwood, for appellant.

Hamby & Tollett, of Crossville, for appellee.

SENTER, J. The appeal in this cause is from the judgment of the Chancellor on an injunction bond.

The complainant filed its original bill in the chancery court of Cumberland county, Tennessee, to enjoin the defendants from cutting and removing timber from the lands of complainant. The original bill alleged ownership in complainant of three separate tracts of land situated in Cumberland county, Tennessee, and alleged that the defendants had entered upon portions of said lands, committing waste, and trespassing thereon by cutting down and selling valuable trees, and removing valuable timber therefrom. The bill alleged that the defendants had already cut a large number of trees and had removed said trees from said lands, and was then cutting and removing valuable timber from said lands, and then had removed certain chestnut trees used for telephone and telegraph poles and had the same on the railroad yard for shipment; and made the necessary and proper allegations entitling complainants to a writ of attachment of the timber cut and still

on the lands, and such of the timber as had been removed from the lands to the railroad station for shipment; and also for a writ of injunction enjoining and restraining the defendants from committing further waste on said lands and from cutting and removing any more timber from said lands.

The writs of attachment and injunction were issued as prayed for. The defendants answered the bill, and by the answer it neither admitted nor denied the ownership of the lands described in the bill in complaint, but denied all other material allegations of the bill. It expressly and specifically denied that the defendants, or either of them, had entered by themselves or otherwise, upon said lands or any part thereof and cutting and removing valuable trees or timber therefrom. The answer denies that either of the defendants had trespassed upon or committed waste of any kind upon said lands.

The original bill was filed on June 2, 1925, and the answer was filed on June 23, 1925. On August 24, 1925, the complainant moved to be allowed to dismiss its bill without prejudice, and the bill was accordingly ordered by the court to be dismissed without prejudice, and at the cost of complainant and sureties on the cost bond. On the same date, on the motion of defendants, an order of reference was made to the master to take proof and report to the next term of the court the amount of the damages, if any, sustained by the defendants by reason of the suing out of said writs of injunction and attachment. Pursuant to the order of reference the Clerk and Master reported that no damage resulted to either defendant E. P. Melvin or J. T. Ashburn on account of the suing out of the attachment, but reported that defendant E. P. Melvin sustained damages in the sum of $63, and defendant J. T. Ashburn had sustained damages in the sum of $110.78, on account of the wrongful suing out of the writ of injunction. Exceptions were filed to the report of the master by the complainant. The exceptions were overruled and disallowed by the Chancellor upon the hearing of the cause on the record and the evidence, and the report of the master was by the Chancellor confirmed, and judgment decreed in favor of defendants for the aggregate sum of $173.78, against the complainant and its surety on the injunction bond, and the costs of the cause. From this decree of the Chancellor the complainant has appealed to this court and has assigned errors as follows:

"ASSIGNMENT OF ERROR.

"The court erred in law in overruling complainant's exceptions to the master's report, and holding defendants E. P. Melvin and J. T. Ashburn had sustained damages because of the issuance of

the injunction in the case, and in confirming the master's report and pronouncing judgment against it, and the surety on the injunction bond.

"The court should have held, as a matter of law, the injunction was confined to the lands described in the bill, and its legal effect was only to prohibit defendants from trespassing on those lands, and that if defendants stopped operations on another or other tracts of land not claimed by complainant or described in the original bill, they could not recover damages on the injunction bond because the injunction had no application to such other lands, but was confined only to the lands described in the bill."

Under this assignment of error appellant contends that the injunction only restrained the defendants from cutting and removing timber from the lands described in the original bill, and that the timber cut by the defendants, and removed from the land, was not cut on complainant's land, and that as defendants were not cutting and removing timber from the lands of complainant as described in the bill, the injunction issued against them in the cause did not operate to restrain the defendants from continuing to cut and remove timber from the lands belonging to another, and not on the lands of complainant, and hence no damage could have resulted from the issuance of the injunction.

It appears that the timber which defendants cut and where they were then engaged in cutting and removing timber was not actually on the lands of complainant described in the bill, but was on an adjoining tract known as the Jarnigan tract. It is contended that the injunction did not enjoin and restrain the defendants from cutting and removing timber on the Jarnigan tract, but only on the lands of complainant as described in the bill, and if the defendants were actually cutting and removing the timber from the Jarnigan tract, and were not cutting and removing timber on complainant's land, that the injunction was limited in its restraining power to the cutting and removing of timber from the lands described in complainant's bill.

In 32 C. J., sec. 748, it is stated: "A person restrained from doing what he had no legal right to do has no right of action for damages, even though the injunction has been wrongfully issued."

Appellant also cites the rule in Gibson's Suits in Chancery, sec. 863, as follows:

"No damages will be allowed which are not the actual, natural and proximate result of the injury arising from the suspension or violation of the defendant's vested legal rights by the injunction. Damages that are remote, speculative, or contingent will not be allowed."

In Southern Railway Company v. Pardue, 123 Tenn., 376, in the first headnote, it is said: "The only damages recoverable for the wrongful suing out of an injunction writ are such as arise from the operation of the injunction itself, and not such as are occasioned by the suit independent of the injunction." High on Injunctions, sec. 1663.

In Railroad v. Pardue, supra, is a case in which the complainant had caused to be issued an injunction restraining the defendant from building a house on certain land claimed by the complainant as a part of its right of way. On the hearing of the cause it was held that the land belonged to the defendant and not to the complainant. The injunction was dissolved and a reference for damages was made, resulting in a decree against the complainant. Both parties having excepted to the master's report, also excepted to the decree of the Chancellor and both parties appealed to the Supreme Court. It was contended for the complainant that the defendant was not entitled to any recovery. The judgment in that case was based upon the rental value of a building the building of which was enjoined. In disposing of the question the court held that it appeared from the evidence that the building would not have been erected had the injunction not issued as the defendant filed a cross-bill in which he sought to have the rights of the complainant and the defendant in the premises fixed by decree of the court, and that his failure to build the building was the result of the adverse claim to the property by the complainants and he did not wish to erect the building until that claim had been settled. In that view of the case it was held by the court that the defendant was not deterred from erecting the building on account of the injunction, but by the fact of the adverse claim and by the suit, and by his desire to have the title settled before building, and hence no damage had resulted on account of the issuance of the injunction.

Appellant cites the above case in support of its contention. But it is readily seen that the rule announced in that case has no application to the present question made on this appeal.

While it is true that the defendants were not cutting and removing timber from the lands of complainant, nor were they committing a trespass nor any waste on the lands of complainant, yet, they were cutting and removing timber from the adjoining lands, and complainant being of the opinion that the timber being cut by defendants was on the land covered by its title papers, filed the bill and enjoined the defendants from doing the thing they were then doing, cutting and removing timber. The effect of this was, to stop the defendants from cutting and removing the timber from the place where they were then at work, pending a determination

of the question as to whether the land from which they were then cutting and removing timber was covered by the title papers of complainant. After the bill had been filed and the injunction had been issued, and after the defendants acting under the inhibitions of the injunction discontinued the cutting and removing of the timber, the complainant dismissed the bill, which operated to dissolve the injunction.

The allegations in the bill in effect alleged that the timber which the defendants were then cutting and removing was on the lands of complainant. The issue presented by the bill and answer was whether the timber which was being cut and removed was on the lands covered by the title papers of complainant. That was the question to be decided and determined by the Chancellor in the suit then pending. The writ of injunction operated to restrain the defendants from a continuation of the thing they were then doing until the court had heard the case and determined whether the timber being cut and removed was on the lands of complainant. Without going into a trial of the case, the complainants no doubt discovered that they were mistaken about the timber being on its land, and upon this discovery proceeded to dismiss the bill. In this situation we think it clear that if the defendants or either of them sustained a loss or damage on account of the wrongful issuance of the writ of injunction, they would be entitled to recover such damage against the injunction bond. On this question of the amount of damages proof was taken and heard before the master, and upon the proof the master based his report, and upon a consideration of the report and the exceptions thereto, and the proof in the cause, the Chancellor confirmed the report of the master and decreed the judgment.

We find no error in this action of the Chancellor. It results that the decree of the Chancellor is affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.