D. C. & J. W. HUBBARD *v.* J. W. FRAVELL *et al.*

1. PRINCIPAL AND SURETY. A debtor in procuring security acts for him self, and not as agent of the creditors, and the surety is not entitled to be released because he has been misled as to the extent of the indebtedness of the principal, either by the principal's silence or fraud, the creditors being in no way implicated.

2. SAME. *Lien.* Where the object of giving security was to release the goods of the principal from execution levy, so that he might continue his business as a retail merchant, and the goods were accordingly surrendered to and used by him for more than a year, there was no lien on the goods to which the surety could be subrogated.

3. SUPREME COURT PRACTICE. An objection made after the decision of the cause, that this court was not full at the hearing, comes too late, a majority of the court having been present and concurring in the judgment.

4. BOND, INJUNCTION. *Sureties. Costs and damages.* By this bill, seeking in the alternative to be subrogated to a supposed lien on certain goods, the complainants prayed that the sheriff and constable, who had levied on the goods certain executions in their hands to which the complainants were not parties, be enjoined from selling or disposing of the goods; the judge granted the injunction as prayed upon complainant's giving bond, with good security, conditioned as the law directs, and the clerk took a bond in double the amount of all the defendants' judgments, conditioned to abide by and perform such orders and decrees as the court might make in the cause, and pay such costs and damages as the court might order, or as might be recovered in a suit brought for wrongfully suing out the injunction. *Held,* that the obligors in the bond were only liable for the costs and damages occasioned by enjoining the sale of the goods.

FROM SMITH.

Appeal from the Chancery Court at Carthage. W. G. CROWLEY, Ch.

E. A. & C. W. GARRETT and J. A. HAILE for complainants.

VERTREES & VERTREES, E. L. GARDENHIRE and B. F. C. SMITH for defendants.

COOPER, J., delivered the opinion of the court.

Bill by the Hubbards, as sureties of Fravell on certain notes on which the other defendants had recovered judgments, to be released from liability upon the ground of a fraudulent concealment of facts which materially increased the risk of their suretyship. The Referees reported in favor of granting the relief sought and the defendants, the creditors, alone filed exceptions. At the hearing, this court being of opinion that, upon the facts found and reported by the Referees, the Referees were wrong in their conclusion, reversed their holding, and dismissed the bill. The complainants have filed a petition for a rehearing, in which they seek to go behind the report of the Referees, without having excepted to it, both on the facts and on matters of relief not passed upon by the Referees. They also ask for a modification of the decree which has been entered.

Under the decision of this court, based upon the statute providing for the appointment of the Referees, and the effect to be given to their report when not excepted to, the petitioners are in no condition to go behind the report. And as their petition does not undertake to call our attention to any fact in the report which was overlooked at the hearing, or to present any new principle of law or authority in conflict with the ruling of this court, the petition might be dismissed as to the merits without more. But in

view of the importance of the case to the parties and the earnestness of counsel, we have carefully examined the record, and considered the arguments submitted in support of the application for a rehearing.

Fravell was a country merchant in Smith county, and his co-defendants wholesale dealers at Nashville, from whom he purchased his goods. In March, 1875, these creditors, except Wright & Co., recovered judgments against him on their several debts, and caused executions to be issued and levied upon his stock of goods. It was estimated that the stock was, perhaps, worth and would sell for enough to pay about sixty per cent. of the judgment debts. Wright & Co. not having any levy, sent an agent to Smith county, who talked about throwing Fravell into bankruptcy with a view to come in for a share of his effects. The agent induced Fravell to go to Nashville upon a suggestion that the creditors might release the stock upon his securing fifty per cent of the debt. Fravell went to Nashville, and as he and Wright both testify, employed Wright, of Wright & Co., as his friend and agent, to negotiate a settlement with the creditors. With Fravell's consent Wright proposed to the creditors that Fravell would give notes, with good security, at six months, for sixty per cent of the debt of each creditor, and execute his own notes at twelve months for the other forty per cent, if the creditors would agree to release his stock of goods so that he might continue in business. This proposition was accepted, and the notes were drawn up accordingly, each creditor preparing the notes payable to him, and all of the

notes being sent by the creditors to Wright. Fra-
vell thinks that his notes for the forty per cent of
debt were left at' Nashville. Wright thinks that all
the notes were handed to Fravell to be returned when
the security was obtained on the sixty per cent notes,
and that they were all returned to him together. It
was understood that Fravell would give the complain-
ants, his neighbors in Smith county, as his sureties,
and the creditors wrote to the officer in charge of the
stock of goods under the levy of their executions, to
surrender the goods upon the security being given.
It is not material whether the forty per cent notes
were left in Nashville, or taken by Fravell to Smith
county, and returned with the other notes. They were
all executed at Nashville, and bear the same date.
Fravell testifies, and the point is material, that the
proposition made by him and accepted by the credi-
tors was that they would . receive the sixty per cent
notes, secured as agreed upon, and release him from
the residue of the debt, and that he afterwards, but
during the same trip, voluntarily executed the forty
per cent notes. The equity of the bill is rested upon
this statement, and that the fact was fraudulently
concealed from the complainants. The defendants, in
their answers, positively deny the truth of the state-
ment. The bill waives an answer under oath. Wright,
who acted as the agent of Fravell, testifies that the
proposition made by Fravell, and accepted by the cred-
itors, was to secure sixty per cent of the debt, and
to give his own notes on longer time for the residue,
and that this was the agreement which was carried

Hubbard v. Fravell.

out. One of the complainants, the other having died, testifies, that before going upon the notes, he and his brother examined Fravell's stock, and estimated it to be worth the amount of debt secured. Under these circumstances, with sixty per cent of their debt already secured by levy, it is not probable that the creditors would surrender the security and the residue of their debt for mere personal security on time for that part of the debt which was already secured. We concur with the Referees in the conclusion that the forty per cent notes were voluntarily executed by Fravell before he left Nashville, and, we add, as part of the agreement with the creditors.

The creditors, so far as appears, were strangers to the complainants, and neither knew them, nor had any correspondence or communication with them. It was the proposition of Fravell that he would give them as his sureties on the notes for sixty per cent of his debt, and he took the notes to Smith county for the purpose. Obviously, he was acting for himself, not as agent of the the creditors, and received, he admits, no instructions from them as to what he should do or say to his expected sureties. The Referees find: "That they (the creditors) were in no way relied upon by the complainants on account of any communication; that they made no communication to them on the subject." They further find that the complainants "made no inquiry in regard to whether the sixty per cent notes were to be in full satisfaction of all the indebtedness of their principal, except of their principal." And we think the testimony is conclusive

Hubbard v. Fravell.

that they made no such inquiry of their principal. Fravell says as a witness: " I did not tell the Messrs. Hubbards that the sixty cents was in full discharge of the debts I owed to these firms." The only living complainant himself testifies: " I asked him (Fravell) nothing about his indebtedness." The testimony of a nephew of the complainants as to what his deceased uncle said in the presence of the living uncle, tending otherwise, is clearly unreliable.

The whole case is in reality narrowed down to this, whether sureties can claim to be released from liability because their principal was more largely indebted than they supposed, they not having made any inquiry as to his indebtedness either from him or the creditors. And if we concede, which the testimony does not justify, that the sureties did inquire of the principal, and he misled them, either by his positive statements or silence, as to the true state of his indebtedness, the law clearly is, as the Referees find, that the fraud of the principal, without the participation of the creditors, will not release the surety. A debtor in procuring security acts for himself, and not as agent of the creditors, and the surety makes the principal his agent for the purpose of delivering the instrument. The law will not recognize the incongruous relation of a person acting for himself in a transaction with another, and also as the agent of that other, in the absence of positive proof, or evidence of fraudulent collusion: *Jordan* v. *Jordan*, 10 Lea, 124, 131. No such proof or evidence is found in this case. The transaction between

Fravell and his creditors was an ordinary business transaction for the adjustment of pressing debt; Fravell was acting for himself, not as agent of the creditors; and if there was any concealment of facts from the complainants, it was by him and not the creditors. There is not the least ground for implicating the creditors in any misconduct. They had no reason to suppose that Fravell would act dishonestly towards his proposed sureties, and the proof does not show that he has so acted in this case. If the complainants had paid the debt promptly, and proceeded at once against their principal, or even if they had been diligent in attending to a liability they had voluntarily entered into, they could have secured themselves. Afterwards, the creditors were at liberty to assert their rights as would be most for their interests.

The petition for rehearing asks, in view of an alternative prayer of the bill, that the complainants be subrogated to the execution liens of the creditors on the goods of Fravell which were released by the execution of the sixty per cent notes. But the very object of that settlement was to extinguish the lien, which was done by the return of the stock of goods to Fravell, to be disposed of in his business. And he did continue to retail them as a merchant for over a year. There is, of course, no lien to which the complainants can be subrogated. The objection of the petition that the cause was not heard by a full court comes too late. Parties cannot be permitted thus to experiment. The case has been heard, without objection, and decided by a majority of the judges of the court.

The decree, which has been entered on the minutes of this court, was drawn up by one of the solicitors of the creditors, and entered after having been read and acquiesced in by one of the counsel of the complainants, without being submitted to the court. This was the usual and proper practice. The petition calls our attention to that part of the decree which purports to render judgment upon the injunction bond, and insists that it is not justified by the character of the case or the stipulations of the bond.

The prayer for extraordinary process in the bill is: "That writs of injunction and attachment issue; that the sheriff and constable (naming them) be enjoined from selling said goods, wares and merchandise, or otherwise disposing of them; that a receiver be appointed to take charge of and sell said goods, etc., according to law; that the proceeds arising therefrom be paid over to the clerk and master of the court, to be held by him, or loaned out by the orders of the court; and upon a final hearing of the cause that the same be paid out to the parties who may be entitled to the same." The chancellor's fiat is: "Issue the injunction as prayed for upon complainant's executing bond with good security in double the amount of the judgments enjoined, conditioned as the law directs." The fiat also directed the issuance of an attachment upon a bond for $500 "conditioned as the law directs." No attachment bond appears in the record, nor does it appear that any attachment was issued. The injunction bond is in the penalty of $3,436.46, conditioned to prosecute the suit with effect,

and in case the complainants fail therein, "to pay and satisfy" the defendants, naming them, "all such costs and damages as may be awarded and recovered against the said D. C. Hubbard and J. W. Hubbard in any suit or suits which may be hereafter brought for wrongfully suing out said injunction, and shall moreover abide by and perform such orders and decrees as the court may make in this cause, and pay such costs and damages as the court may order." The injunction itself is directed to "J. W. Fravell" and the sheriff and constable by name, their agents, attorneys, etc., and prohibits them selling or otherwise disposing of the said goods, wares and merchandise until the hearing of the cause. About a month after the filing of the bill a receiver was appointed to take possession of and sell the goods levied upon, and the proceeds of sale were afterwards loaned out, under the orders of the court.

At the same time that the creditors recovered judgments upon the sixty per cent notes against Fravell and his sureties, they also recovered judgments against Fravell alone upon the forty per cent notes. The judgments were all recovered before a justice of the peace. Upon the judgments against Fravell alone, the creditors sued out executions at once under the statute, and had them levied upon the goods. Although the main object of the bill was to obtain relief from the judgments against the complainants by a perpetual injunction, a secondary object was, in the alternative of the complainants being held liable on the judgments, to be subrogated, as we have seen, to the liens of the

Hubbard *v.* Fravell.

creditors on the goods which were released by the execution of the notes. For this reason, the bill sought to impound the goods by attachment and injunction. The end was attained by the injunction and the appointment of a receiver. The injunction was dissolved as to Wright & Co. and Wright, Harris & Co., upon their giving a refunding bond. But no effort seems to have been made by the other creditors to dissolve the injunction.

The injunction actually asked for in the bill, and issued, was only to enjoin the sheriff and constable, who had levied the executions, from selling or disposing of the goods. The fiat of the judge was to issue "the injunction as prayed," upon the complainants giving bond "conditioned as the law directs." The bond recites the prayer of the bill and fiat as above, and is conditioned to "prosecute the said injunction with effect," or on failure to pay and satisfy the defendants, or either of them, "all such costs and damages as may be recovered against D. C. Hubbard and J. W. Hubbard in any suit or suits which may be hereafter brought for wrongfully suing out said injunction, and shall moreover abide by and perform such orders and decrees as the court may make in this cause, and pay such costs and damages as the court may order."

The condition of an injunction bond is provided for by statute in two cases, one where the execution of a judgment is enjoined, and the other where, before judgment, the litigation is brought into chancery by injunction: Code, sec. 4439. It is competent,

however, in cases not provided for by statute, for the judge to order, and the clerk to take a bond with such conditions of liability as the judge may deem proper: *Black* v. *Caruthers,* 6 Hum., 87; *Newell* v. *Porter,* 10 Hum., 325: *Ranning* v. *Reeves,* 2 Tenn. Ch., 263. Where the statute prescribes the condition of a bond, the surety will not be liable beyond the statutory requirements, although the conditions may be broader and express: *Horton* v. *Cope,* 6 Lea, 155, 160. So, if the fiat of the chancellor prescribe a penalty not justified by the nature of the case: *Moore* v. *Hallum,* 1 Lea, 511. And a clerk clearly has no power to insert in an injunction bond conditions not prescribed by law or the fiat of a judge: *Coltart* v. *Ham,* 2 Tenn. Ch., 356; *Enochs* v. *Wilson,* 11 Lea, 228.

The fiat of the judge in this case gives the clerk no instructions as to the condition of the bond. It only requires the bond to be conditioned as the law directs. But the law gives no directions in a case where the complainant seeks to enjoin the sale of property by an officer under an execution to which the complainant is no party, unless indeed the injunction be treated as enjoining the execution of the judgment on which it has issued *pro tanto,* that is to the extent of the value of the property, the sale of which is enjoined. This was what was done in *Moore* v. *Hallum, supra.* The bill does not ask that any of the judgments, either those against Fravell and the complainants, or those against Fravell alone be enjoined. It only enjoins the sale of the property levied upon,

in order that the complainants might have the benefit of its value if entitled to it. The parties have, perhaps, acted under a different impression as to the extent of the injunction, which will sometimes happen: *Chilton* v. *Scruggs,* 5 Lea, 308. The liability would be otherwise if the entire debt had been actually enjoined upon a ground which, if sustained, would have given full relief, although the injunction was also in part to enjoin the sale of property levied on by execution: *Wood* v. *McFerrin,* 2 Baxt., 493. The case before us falls within the principle of the ruling in *Moore* v. *Hallum.* The complainants, and their sureties in the injunction bond, are liable to the creditors, whose executions were levied upon the stock of goods in question, to the extent of the costs, and the damages, if any, sustained by reason of the injunction. The decree may declare their rights to this extent, and the cause be remanded to the court below to ascertain the damages.

The proper decree, on the merits of this case, is that the equity of the bill being fully met by the answers and not sustained by the proof, the bill is dismissed with the costs of the entire cause. The judgment which the defendants are entitled to on the injunction bond is, in legal effect, a judgment by motion, and is such as the conditions of the bond, so far as they are authorized by law or the fiat of the judge, will justify, although the conditions may in fact be broader and express. The law limits the liability in this case to the cost and damages sustained by enjoining the sale of the goods levied. The ex-

ecution creditors are, of course, entitled to the proceeds of the goods in the custody of the court.

The decree heretofore rendered in this case will be set aside, and a decree entered in accordance with this opinion.