SOUTHERN RAILWAY COMPANY *v.* H. W. PARDUE.

(*Knoxville.*    September Term, 1910.)

1. **INJUNCTION.** Damages recoverable are those arising from the injunction, and not those occasioned by the suit.

   The only damages recoverable for ·the wrongful suing out of an injunction writ are such as arise from the operation of the injunction itself, and not such as are occasioned by the suit independent on the injunction. (*Post, p.* 380.)

2. **SAME.** Same. Damages recoverable are merely nominal where defendant was deterred by the controversy and suit independent of the worngful injunction; case in judgment.

   Where the defendant is deterred from building a house on his land by the fact of the adverse claim, and by the suit itself, independent of the injunction; as where, after he was made aware of the controversy over the title, he would not have built, or proceeded further with his building operations, until that controversy was settled by decree of the court, the damages recoverable, on the injunction bond, for the wrongful suing out of the injunction writ, are merely nominal. Evidence stated and held to show that defendant was so deterred by the controversy and suit, independent of the injunction. (*Post pp.* 377-380.)

3. **SAME.** Rents are not recoverable as damages on injunction bond for wrongful injunction against erection of a building which is finally and permanently abandoned and never erected.

   Where an injunction wrongfully sued out prevented the defendant from erecting a certain building on his lot, but the erection of which was finally and permanently abandoned, and instead thereof a new, different. and much larger building, costing five times as much, and devoted to different uses, was erected, the defendant is not entitled to recover as damages on the injunction bond the rental value of such contemplated building never in fact erected. (*Post, pp.* 380, 381.)

Railroad v. Pardue.

Case cited and approved:  Bridges v. Lanham, 14 Neb., 369.

Case cited and distiguished:  Spears v. Armstrong . (Tenn. Chy. App.), 42 S. W., 37; Roberts v. White, 73 N. Y., 375.

## FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.  HAL H. HAYNES, Chancellor.

HARR & BURROW, for complainant.

COX & SELLS, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This case comes to us on an appeal from the decree of the chancellor allowing damages on an injunction bond, under a motion and reference for that purpose. The complainant had caused to be issued an injunction restraining the defendant from building a house on certain land claimed as a part of its right of way.  On the hearing of this matter it was decreed that the land belonged to the defendant and not to the complainant. The injunction was dissolved, and a reference for damages was made, as above indicated, and a report made thereon by the master, to which exceptions were filed by both sides.  The chancellor sustained some, and overruled others; the result being a decree against the complainant for $1000.  The defendant appealed, and as-

signed errors, insi    that a much larger amount was due. The complainant also appealed, and assigned errors, insisting that nothing was due.

The questions made upon the hearing in this court arise chiefly upon the action of the chancellor upon exceptions to the report of the master. In the view we take of the case, it is unnecessary to consider anything except complainant's first assignment, which is to the effect that it was error for the chancellor to allow any rental at all for the use of the proposed building, because the building contemplated when the suit was begun was never constructed at all, but the project was abandoned after the injunction was dissolved.

In order to properly dispose of this question we must understand the relations of the parties to the property or lot upon which defendant was about to build the house.

It is undoubtedly true that defendant never heard of the complainant's claim to the lot until just before the suit was brought. Believing that he was the owner, and knowing of no one who was disputing his right to the lot, he was, in good faith, about to erect upon it, at a cost of $8000, a building which was to be used for a wholesale store, and, in addition, parts of it were to be used for a bakery and a barber shop. He had plans drawn, and had a contract made with a builder, and a considerable lot of material placed upon the ground. When matters were in this condition, he first heard of the complainant's claim, through complainant's solicitor, Mr. Harr, and its agent, Mr. Wampler. His atti-

Railroad v. Pardue.

tude he thus explains or sets forth in the first deposition which he gave, which appears in the original cause. On page 77 of that record, he was asked and answered questions as follows:

"Q. When did you buy this lot, Mr. Pardue? A. February 24, 1906. Q. How long was this before you commenced your building on it? A. About 18 months. Q. Had you learned before this that the railroad company claimed a right of way 100 feet north from the center of its track? A. No, sir; I had not, and if I had heard so I would not have bought the lot. Q. Had you heard of such claim when you commenced the building? A. No, sir. Q. When did you [you did] hear of this claim of the railroad you wanted it settled before you built, did you not? A. Yes, sir; I wanted it settled definitely, and when I was notified, I told Wampler and Mr. Harr that I would compromise."

Accordingly, pursuing the purpose then expressed, he filed a cross bill, in which he prayed that the rights of the complainant and defendant in the premises should be decreed, and that the line between their properties and the right of way of the complainant be ascertained and established.

Now, under the evidence quoted, there can be no doubt that the defendant was deterred from building, not by the injunction, but by the fact of the adverse claim, and by the suit itself; that is to say, after he was made aware of the controversy he would not have built, or proceeded further with his building operations, until that controversy over the title was settled by de-

cree of the court. It is equally beyond the pale of dispute that the prayer we have referred to as contained in the cross bill was made to invoke the action of the court, to the end that the controversy over the title might be settled, so that he might know what was his own.

Now, under these circumstances, is defendant entitled to anything more than nominal damages upon the injunction bond, or against complainant? Certainly not. The mere propounding of the question suggests a negative as the only answer possible, within the bounds of reason. The chancellor, one of the most learned and one of the ablest we have upon that bench, as well as one of the most just-minded of men, could not have failed to reach the same conclusion, but for the fact that the evidence which we have quoted from the defendant himself escaped his attention when he was preparing the opinion, which he filed and sent up with the record, and in accordance with which the decree was pronounced. No authority is needed for the proposition, but there is authority; for, as well said by Mr. High, "the only damages which can be recovered are such as arise from the operation of the injunction itself, and not such as are occasioned by the suit independent of the injunction." High on Injunctions, sec. 1663.

What has just been said is sufficient to dispose of the case; but we may add that, even if the injunction itself had been the cause of the failure to build the structure on the lot, we should be unable to hold that a man might collect rent on a house, never built, held in mere contemplation, and finally and permanently

abandoned.   To hold otherwise would be equivalent to granting revenue upon castles in the air.

There are cases which hold that rent may be allowed as damages where the erection of a building has been delayed (*Spears* v. *Armstrong* [Tenn. Ch. App.], 42 S. W., 37; *Roberts* v. *White,* 73 N. Y., 375); but we know of no case where rent has been allowed upon a building, the construction of which has been abandoned.   When the building is subsequently erected, after the restraint caused by the injunction has been removed, the court can then see that contingency has given place to achievement; but, when it is abandoned, the doubt based upon the contingency that necessarily attends all uncompleted projects is proven, justified, and confirmed. *Bridges* v. *Lanham,* 14 Neb., 369; 15 N. W., 704, 45 Am. Rep., 121.   In the present case, it appears that the original building contemplated was abandoned; and a new and different one, costing five times as much and devoted to different uses, and much larger, was substituted for it.

On either ground it is clear the defendant was entitled to no damages for the wrongful suing out of the injunction, save mere nominal damages.

This view of the matter renders it unnecessary to refer to or discuss the other errors assigned.

The result is the decree of the chancellor must be reversed.   The complainant will be taxed with the costs of the motion accrued in the court below, and the defendant will be taxed with the costs of this court.