RUSSELL et al. v. TENNESSEE & KENTUCKY TOBACCO CO. et al.

NATIONAL BANK OF KENTUCKY et al. v. SAME.

Middle Section. July 20, 1935.

Petition for Certiorari denied by Supreme Court, January 25, 1936.

A. L. Dorsey, of Springfield, for appellants.
Charles Willett, of Springfield, for appellee Russell.

DeWITT, J.   The suit first mentioned in the caption of this opinion was sustained as a general creditors' proceeding against the Tennessee & Kentucky Tobacco Company.   The bill in the other suit mentioned was treated as a cross-bill in the former suit; and therein, among other things, it was sought in behalf of the creditors to hold S. R. Russell liable (1) for unpaid capital stock; (2) incurring indebtedness in excess of the paid-in capital; and (3) on the ground that the defendant corporation was a sham and a fraud and was so operated.   None of these claims was sustained against him, either by the chancellor or by the appellate courts.   See the

opinion of this court, 16 Tenn. App., 561, 65 S. W. (2d), 256. The final decree was in his favor.

The chancellor has awarded to S. R. Russell a recovery of $1,073.33 against the cross-complainants, the receivers of the National Ban'; of Kentucky and the Peoples Bank of Springfield, and the surety on their injunction bond, as damages found to have been suffered by Russell from a wrongful injunction obtained against him by the cross-complainants, restraining him from further incumbering or otherwise disposing of his property. The said injunction was issued on September 5, 1925, and was in force until March 1, 1926, when upon motion it was dissolved by an interlocutory decree, exception to said dissolution being reserved by the cross-complainants.

The recovery awarded was not for damages for the period prior to March 1, 1926, as it appeared that no damage had been sustained. It represents compensation for loss incurred after that time, as found concurrently by the chancellor and master, the items and amount not being in dispute. It is the right to recover any amount that is in controversy. The theory of the award is that by a subsequent agreement between the parties the injunction was treated as still in force and that the cross-complainants are estopped by the said agreement, which will now be set forth.

In their bill, which was treated as a cross-bill, the complainants prayed also for an attachment of the property of S. R. Russell, but no attachment was ever issued.

After March 1, 1926, the injunction was never revived or reinstated, unless it was done by an agreement of the parties embodied in a decree as follows:

"Whereas, in the above styled cause at Rule #4697 an injunction and attachment was prayed against the Defendant S. R. Russell, to restrain and to prevent him from disposing of his property, said injunction having been issued and served, but the attachment was not issued or served; and

"Whereas, at an interlocutory hearing before the Court said injunction was dissolved, to which action of the Court the Complainants therein excepted, and,

"Whereas, the cause remains now before the Court.

"Now, therefore, the parties litigant in the causes make the following agreement which will be made the order of the Court in the cause, by consent, viz.:

"The said S. R. Russell, joined by his wife Jennie B. Russell, will execute, acknowledge, and deliver with recording fee, a deed of trust to R. C. Verhine, as special master and trustee, upon a lot of land in Springfield, Tennessee, said deed of trust to be in the sum of Ten Thousand ($10,000.00) Dollars and conditioned to pay any judgment of this Court in this cause against the said S. R. Russell, if said judgment be not appealed from, and if appealed from to be

paid when made final by any appellate court to which appeal may be taken or certiorari granted. The said S. R. Russell also deposits with the said Verhine as a collateral to said deed of trust obligation a certain lien note executed by O. U. Sherrill et ux., for $3,250.00, date Nov. 1, 1926, and payable in installments of $250.00 each, beginning May 1, 1927, and a like sum every six months thereafter.

"And, said deed of trust and collateral aforesaid, having been seen and examined by the parties Complainant the same is in all respects approved, and filed.

"It is, accordingly, agreed by the parties litigant that any and all lien, present and future, upon the property of the said S. R. Russell by virtue of this litigation be and the same is released and waived.

"Wherefore, the Court doth order, adjudge and decree, upon the consent agreement of the parties litigant, that any and all lien, present and future, upon the property of the said S. R. Russell be and the same is released and waived, and that the said R. C. Verhine will take and hold the deed of trust aforesaid to secure the payment of any judgment that may be rendered and made final, as aforesaid, in this cause, to the effect that the said S. R. Russell is free to sell, mortgage, encumber and dispose of any and all of his property (except that embraced in said deed of trust) as though this proceeding had not been instituted.

"O. K.　　　　　　Charles Willett, Sol. for Russell.

"True & Dorsey, solrs, for cross-complainants."

Russell complied with the provisions of this agreement and decree. By a later agreement certain changes were made. On August 16, 1928, he deposited in the registry of the court the sum of $1,-378.84, and it remained there until December 11, 1933. Also on August 16, 1928, he deposited a note, secured by a mortgage for $1,871.16, and it remained there until December 11, 1933. A dividend of $106.33 due him from the receivership fund was withheld from him until the same date. It is interest on these amounts that represents the damages awarded against the cross-complainants and the surety on their injunction bond given on September 5, 1925.

It is insisted in behalf of the appealing cross-complainants that despite the agreement and these transactions pursuant thereto, there is no liability on the bond for such damages.

It appears that Mr. Russell owned some real estate which he desired to sell and did sell after the decree of March, 1927, embodying the agreement, was entered. He must have considered or found that though the injunction had been dissolved he would have difficulty in getting purchasers to accept his titles through their fear that a lis pendens existed. The decree which he obtained upon the agreement expressly removed all doubt, for it declared "that any and all lien, present and future, upon the property of the said S. R. Russell by virtue of this litigation be and the same is released and

waived;" and "that the said S. R. Russell is free to sell, mortgage, encumber and dispose of any and all of his property (except that embrace in said deed of trust) as though this proceeding had not been instituted." Nothing in that decree could properly be construed as a reinstatement of the injunction. The rule is that after an injunction has been dissolved it can only be revived by a new exercise of judicial power. Crum v. Fillers, 6 Tenn. App., 547. And where an injunction is dissolved before the hearing, the cause stands at the hearing with no injunction in force. Foley v. Leath, 3 Tenn. Cas., 353.

It is true that so long as the cause remains undetermined the court, after dissolution of an injunction, may reinstate the same for good cause shown; but such reinstatement does not relate back so as to render invalid proceedings taken in the interim. Young v. Davis, 1 T. B. Mon. (Ky.), 152.

In the instant case the dissolution of the injunction was unconditional. The reservation of an exception to the dissolution did not qualify it, but merely preserved a right to review of the interlocutory order of dissolution in an appellate court, as no appeal would lie from that order. After the order of dissolution there was no legal obstacle to disposition of the property, though there may have been some practical difficulty. We are here dealing with a question of the existence of an injunction and consequent liability therefor, not a lis pendens, if any, other than such as the injunction would create.

In McMinnville & M. R. Co. v. Huggins, 7 Cold., 217, as to superseding an interlocutory order dissolving an injunction, after pointing out that the office of an injunction is not to authorize any act to be done, but merely to restrain performance, the court said:

"The injunction being removed, the party may act at his peril, as if the injunction had not issued; but he does not act under and by virtue of the order dissolving the injunction. Neither under the injunction, or the order dissolving it, is there any proceeding which can be stayed; and therefore, though each of these orders might be reversed, a supersedeas can act on neither."

The expression, "may act at his peril," plainly refers to the peril that the injunction might be reinstated; and the corollary is that before any reinstatement the party may act, after dissolution, as if no injunction had ever been granted.

We hold that the decree embodying the agreement of the parties should be construed, not as treating the injunction as in force or reinstated, but merely as a method of removing all question as to the cross-defendant's ability to convey good titles to his property.

The only damages recoverable for the wrongful suing out of an injunction writ are such as arise from the operation of the injunc-

tion itself, and not such as are occasioned by the suit independent of the injunction. Southern R. Co. v. Pardue, 123 Tenn., 376, 131 S. W., 862. An injunction bond covers damages incurred only up to the dissolution of the injunction; and as no damages were incurred in this case before the dissolution, and as, for the reasons given, the injunction was not reinstated, there can be no recovery.

It results that the assignments of error must be sustained. The decree appealed from is reversed, and the judgment vacated.