# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 2000 Session

## SOUTH CENTRAL TENNESSEE RAILROAD AUTHORITY, ET AL. v. ANDRE HARAKAS, ET AL.

**Direct Appeal from the Chancery Court for Hickman County**
**No. 97131978      Donald P. Harris, Chancellor**

---

**No. M1999-00567-COA -R3-CV - Filed August 9, 2000**

---

Plaintiffs, the owner and lessee of property on which a railroad track was located, obtained a temporary injunction prohibiting Defendants, owners of adjacent property, from building a house on what Plaintiffs alleged was their right-of-way. After Defendants presented evidence that Plaintiffs possessed only an easement as needed for railroad operations, rather than a right-of-way, the court dissolved the temporary injunction and denied a permanent injunction. Defendants then filed a motion to assess damages and enforce liability of surety on injunction bond pursuant to Tenn. R. Civ. P. 65.05, seeking recovery for the losses resulting from the issuance of the temporary injunction. Defendants appeal the trial court's denial of their motion. We reverse.

**Tenn. R. App. P. 13 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

H.E. Miller, Jr., Gallatin, Tennessee, for appellants Andre Harakas, Sara Harakas, Cynthia Louise Vernon, and Louise Miner.

William Landis Turner, Hohenwald, Tennessee, for appellees South Central Tennessee Railroad Authority and South Central Railroad Company.

**OPINION**

The appellants, the Harakases,[1] seek review of the trial court's denial of their post-trial motion, made pursuant to Tenn. R. Civ. P. 65.05, to assess damages and collect upon an injunction bond which had been posted by the appellees, South Central Tennessee Railroad Authority (the "Authority") and South Central Tennessee Railroad Company (the "Company" and, collectively, "the Railroads"). In the underlying action, the Harakases were enjoined, upon the Railroads' motion, from continuing construction on a house they had begun building sixty feet from the center of a railroad track owned by the Authority and leased to the Company. The Harakases assert that they incurred damages from the four and a half month delay in construction and were wrongfully enjoined from an act they had a right to perform. Although neither party has appealed the judgment in the underlying action, the facts of that dispute must be examined in considering the issues raised in this appeal.

In November of 1997, the Harakases were building a house on real property they owned. The property adjoined land owned by the Railroads around their railroad track. On November 10, the Railroads filed a complaint in which they claimed to own a right-of-way, extending one hundred (100) feet from the centerline of the track. They alleged that the Harakases' construction, being only sixty (60) feet from the centerline, encroached on their right-of-way. They further alleged that the Harakases' "violation of Plaintiffs' property rights is willful, intentional, and gross, they being fully informed of the facts concerning the property and the rights of the parties therein."

Based upon this complaint, the Railroads obtained a temporary restraining order ("TRO") prohibiting the Harakases from further construction on the house or other encroachment on the right-of-way the Railroads claimed. The court required the Railroads to post a $5,000 injunction bond. That bond, with handwritten corrections by the surety, counsel for the Railroads, read in pertinent part:

> The condition of this obligation is that the principal(s) will prosecute the temporary restraining order with effect, or in case of failure, pay all costs that may be adjudged against the defendant(s), and all such damages as may be sustained by the defendant(s) caused by the wrongful suing out of the temporary restraining order.

A hearing on the application for temporary injunction was held on November 25. The trial court made preliminary findings that (1) the Authority was "the owner, in fee, of a strip of land running ninety (90) feet in width from the centerline of the railroad track and lying between said centerline and the land acquired by Defendant in Deed Book 55, at page 433, ROHCT;" and (2) the Railroads were entitled to the temporary injunction restraining the Harakases from building any permanent structure encroaching upon "said strip of land." The bond remained in effect.

---

[1]The parties agreed below that the proper defendants were Andre Harakas, Sara Harakas, Cynthia Vernon, and Louise Miner. The group of defendants, now appellants, will be referred to as "the Harakases" throughout this opinion.

The Harakases moved to dissolve the temporary injunction on January 9, 1998. Their motion was supported by an affidavit of Karen Dutton, a title examiner. After tracing the title history of the real property on which the house was being built, the title examiner attested that no right-of-way had been conveyed to the Railroads by the Harakases' predecessors in title. The deed originally relied upon by the Railroads was determined by the examiner not to be applicable to the property in dispute. The trial court denied this motion, but noted that the matter should be set for trial as soon as possible.

At the March 18 trial, the parties stipulated to the relevant facts, and argument was had on the law. The parties stipulated that the railroad track had been in its present location since before 1900. They further stipulated that there was no record that a right-of-way on the property where the house was being constructed had been conveyed by deed to any of the Railroads' predecessors in interest or to the Railroads. In addition, the parties stipulated that there was no record of any lawsuit by the Authority or its predecessors in interest seeking to condemn such right-of-way or any lawsuit by the Harakases' predecessors in interest seeking compensation for the taking of a right-of-way.

Faced with this inability to prove ownership of the right-of-way as originally asserted, at trial the Railroads took the position that the right-of-way originated in the Charter of the Nashville and Tuscaloosa Railroad Company dated June 6, 1877.[2] That Charter authorized the railroad "to appropriate as an easement the right-of-way not exceeding two hundred feet, one hundred feet on each side of the center line of said road," to be exercised by filing a lawsuit. No such lawsuit was ever filed, however.

The Harakases acknowledged that the Railroads had a prescriptive easement based upon their long use of the track, but argued that such easement would extend only approximately ten (10) feet on either side of the center line of the track, which they claimed was the only amount of land obviously used for the operation of the train.

The trial court determined that, regardless of the size of any easement right-of-way which the Railroads might hold under their Charter, the Harakases, as owners in fee of the property on which the house was being constructed, were entitled to use their property in any way that did not interfere with the use of the property for railroad purposes.[3] Based upon this holding and its finding that "the house in issue is located so that it does not interfere with the current operation of the railroad," the court held that the Harakases could "build a house on their property even if it is on the easement of the Plaintiffs, so long as the house does not interfere with the present or future operations of the railroad." The court dissolved the temporary injunction, denied the Railroads' request for a permanent injunction, and ordered the parties to brief the issue of the size of the easement.

---

[2]The Railroads relied upon notations accompanying railroad maps. The notation for the relevant parcel stated, "Charter width claimed under decisions of Tennessee Courts."

[3]The trial court relied upon *Railroad Co. v. Telford's Executors*, 89 Tenn. 292 (Tenn. 1890).

In its final order on this issue, the trial court found that the Railroads had "an easement right-of-way across the property of the defendants to the extent needed for railroad operations, not to exceed 100 feet on either side of the center line of the track." The court further found that the Harakases' house construction "has not and will not interfere with the operations of the railroad as it presently exists" and denied the Railroads' request for an injunction. This ruling was not contested by any party to this action and is not at issue in this appeal.

What is at issue, however, is the trial court's ruling on the Harakases' motion to enforce liability of surety on injunction bond. This motion, filed pursuant to Tenn. R. Civ. P. 65 and 65A, sought recovery of costs and damages resulting from the issuance of the TRO and the temporary injunction. It alleged that the Harakases had incurred costs and damages in excess of the amount of the surety bond. An affidavit filed later in support of the motion stated that the defendants had incurred expenses exceeding $5,000 as a result of the issuance and extension of the TRO. These expenses included $4,650 in attorney's fees and reporter's fees, $1,000 in interest on a construction loan from the date the TRO was issued to the date the preliminary injunction was dissolved, and $2,250 for loss of use of the house for four and one half months. The Harakases requested an order requiring the surety to pay the face amount of the bond. Sara Harakas later filed a second affidavit in November 1998, attesting that the defendants had incurred an additional $6,740 in construction costs due to the delay caused by the issuance of the TRO and the temporary injunction.

The trial court denied the Harakases' request for damages. It stated:

[T]he court is of the opinion that because the defendants were constructing a dwelling upon the right-of-way owned by plaintiff for the purpose of operating a railroad, obtaining a temporary restraining order until such time as the rights of the parties could be litigated was not wrongful.

The Harakases argue that because the facts did not warrant the issuance of the injunction and they at all times had the right to perform the enjoined act, they were wrongfully restrained within the meaning of Rule 65.05(1) and, therefore, were entitled to the injunction bond as damages.

Tenn. R. Civ. P. 65.05 states:

Injunction Bond. (1) Except in such actions as may be brought on pauper's oath, no restraining order or temporary injunction shall be granted except upon the giving of a bond by the applicant, with surety in such sum as the court to whom the application is made deems proper, for the payment of such costs and damages as may be incurred or suffered by any person who is found to have been wrongfully restrained or enjoined. The address of the surety shall be shown on the bond.

The plain language of the rule establishes that the purpose of requiring a bond as a condition precedent to the issuance of a restraining order or preliminary injunction is "to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction

4

or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999). "In order to recover in an action on an injunction bond, the defendant in the original injunction suit need only show that he was wrongfully restrained or enjoined." *Taylor v. Morris*, No. 01A01-9804-CH-00211, 1999 WL 675138 at *3 (Tenn. Ct. App. Sept. 1 1999) (no Tenn. R. App. P. 11 application filed) (citing Tenn. R. Civ. P. 65.05.) At issue here is whether the Harakases were "wrongfully restrained or enjoined" within the meaning of Rule 65.05. Few Tennessee cases address this issue.[4] In *Holder v. Clesor*, No. 01A01-9702-CV-00080, 1997 WL 528817 (Tenn. Ct. App. Aug. 27, 1997) (no Tenn. R. App. P. 11 application filed), this court considered the trial court's dismissal of a motion for summary judgment filed by defendants seeking damages resulting from the issuance of an injunction which had previously been reversed by this court. In the portion of that opinion relevant to the issue here, this court commented that its original reversal of the injunction had been based on a failure of proof on the part of the plaintiff, "thus resulting in the wrongful issuance of the injunction." This court further stated:

> In the case before us, the trial court issued an injunction upon plaintiff posting an injunction bond as required by Tenn. R. Civ. P. 65.05. **It was determined that the facts did not warrant the issuance of the injunction; therefore, the injunction was wrongfully issued.** (emphasis added).

*Holder*, 1997 WL 528817 at *2.

This language from *Holder* is consistent with cases interpreting Fed. R. Civ. P. 65(c), which is essentially identical to the Tennessee rule.[5] The federal cases find that "a party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of America v. Lewis Galoob Toys*, 16 F.3d 1032, 1036 (9th Cir.), *cert. denied*, 513 U.S. 822, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994); *see Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir.1990) ("A party has been 'wrongfully enjoined' under Fed. R. Civ. P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act."); *Division 1, Detroit, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp.,* 844 F.2d 1218, 1224 (6th Cir. 1988) ("reversal on appeal of an injunction is tantamount to finding that the enjoined party was 'wrongfully enjoined or restrained,' and . . . such reversal triggers the wrongfully enjoined party's right to pursue recovery on the security

---

[4]Although few Tennessee cases interpret Tenn. R. Civ. P. 65.05's "wrongfully enjoined" language, cases construing the law prior to the 1971 adoption of the Rules recognize the court's discretion to impose injunction bonds as a prerequisite to obtaining an injunction. *See, e.g., Hubbard v. Fravell*, 80 Tenn. 304 (1883); *Newell v. Porter*, 29 Tenn. 325 (1849). Then, as now, the purpose of the bond was to compensate for damages arising from the wrongful issuance of an injunction. *See Tenn. R. Civ. P. 65.05; Russell v. Tennessee & Kentucky Tobacco Co.*, 89 S.W.2d 907, 910(Tenn. Ct. App. 1935); *Smith v. Ruohs*, 58 S.W. 1101, 1106 (Tenn. Ch. App. 1900).

[5]Federal Rule of Civil Procedure 65(c) provides:
No restraining order or preliminary injunction shall issue except upon the giving of securities by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

5

bond."); *Coyne-Delaney Co. v. Capital Dev. Bd. of Ill.*, 717 F.2d 385, 391(7th Cir.1983) ("Most cases hold . . . that a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case."); *State of Alabama ex rel Siegelman v. U.S. Environmental Protection Agency*, 925 F. 2d 385, 391 (11th Cir. 1991) (preliminary injunction issued by court later found on appeal to lack jurisdiction resulted in party being wrongfully enjoined, and trial court "was obliged to award damages to [enjoined defendant] unless good reasons existed to deny such an award."). This approach furthers Federal Rule 65(c)'s underlying purpose. *See Hoechst Diafoil Co.,* 174 F.3d at 421.

> The Ninth Circuit has stated that a majority of federal circuits:

> hold there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond. *See, e.g., National Kidney Patients Ass'n v. Sullivan,* 958 F.2d 1127, 1134 (D.C. Cir. 1992) (a "defendant injured by a wrongfully issued preliminary injunction is presumptively entitled to recovery on the injunction bond"), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993).

*Nintendo*, 16 F.3d at 1036-37. The Ninth Circuit also expressed its approval of that presumption, stating its belief that the rule is sound.

> By adhering to this standard, the party enjoined will usually recover damages, thus discouraging parties from requesting injunctions based on tenuous legal grounds. *See Coyne-Delaney Co. v. Capital Dev. Bd.*, 717 F.2d 385, 392 (7th Cir.1983) ("... [this test] discourages the seeking of preliminary injunctions on flimsy (though not necessarily frivolous) grounds."). Furthermore, a presumption that damages will be awarded from the bond assures district court judges that defendants will receive compensation for their damages in cases where it is later determined a party was wrongfully enjoined. *See Note, Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c),* 99 Harv. L. Rev. 828, 838 n. 36 (1986). Moreover, demands on judicial resources may be relieved to some extent, because a defendant who can recover damages against a preliminary injunction bond will be less likely to file a separate malicious prosecution action. *See generally Note, Interlocutory Injunctions and the Injunction Bond,* 73 Harv. L. Rev. 333 (1959). Finally, this standard provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond.

*Id.* at 1037.

The Railroads initiated this action and obtained a temporary restraining order on the basis of a complaint in which they asserted the Harakases were encroaching on a right-of-way owned by the Railroads and that the Harakases were willfully violating the Railroads' property rights, "they being fully informed of the facts concerning the property." The Railroads originally relied on a deed to

show their ownership of the purported right-of-way.  The Harakases employed a title examiner who found the deed did not cover the land in dispute.  The Railroads were unable to find any proof that a right-of-way across the Harakases' land had been obtained by eminent domain.  By trial, the Railroads were relying on a notation, "Charter width claimed under decisions of Tennessee courts." The trial court determined that the Railroads had an easement right-of-way "to the extent needed for Railroad operations."  It was undisputed that the Harakases' house had not interfered with the operations of the railroad.

Based upon these facts, it seems clear that the TRO and the temporary injunction were granted on the basis of allegations which were later shown to be inaccurate.  Because the house has never encroached upon any existing property interest of the Railroads, the Harakases were always entitled to build the house on their land. Further, it is difficult to see how the Railroads faced the threat of irreparable harm since, if they had successfully proved their property interest as they alleged it, the Harakases could have been forced to remove the house.  Therefore, we conclude the Harakases were wrongfully enjoined or restrained within the meaning of Rule 65.05.  Accordingly,  the trial court's decision not to award damages arising from the injunction is reversed.

We do not read *Holder* or the federal cases as holding that every preliminary injunction which is subsequently dissolved constitutes a wrongfully issued injunction within the meaning of Tenn. R. Civ. P. 65.05, and we do not so hold.   Whether a party has been  wrongfully restrained can be determined by the facts in each case and, in part, by reference to the criteria for the issuance of a temporary injunction, such as those set forth in  Tenn. R. Civ. P. 65.04(2):

> A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.[6]

Situations exist where the initial seeking and issuance of a temporary restraining order or temporary injunction were appropriate, and meet these criteria, but the court nonetheless declines to issue a permanent injunction. The Harakases' situation is not one of those.

The Railroads make two arguments that the Harakases are not entitled to damages or to collect on the injunction bond.  The first is that the Railroads agreed to lift the injunction so long as its one hundred (100) foot easement was recognized.  The Railroads' contention in this regard can be considered an argument that any damages suffered by the Harakases due to the delay were not caused

---

[6]"The most common description of the standard for preliminary injunction in federal and state courts is a four-factor test: (1) the threat of irreparable harm to plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure*  §4-3(l) (1999).

by the injunction. *See Diversified Equities, Inc. v. Warren*, 617 S.W.2d 171, 172 (Tenn. Ct. App. 1981) (the only damages allowable were those that proximately resulted from the issuance of the injunction). The record shows, however, that the Railroads had no title to the right-of-way, notwithstanding the allegations in their complaint, and were not entitled to the unconditional one hundred (100) foot easement they claimed.[7]  The Railroads' easement right-of-way was limited "to the extent needed for railroad operations, not to exceed 100 feet on either side of the center line of the track."  Therefore, we cannot conclude that the Harakases were under some duty to accept the Railroads' offer, which involved agreeing that the Railroads had a greater property interest than they were found to possess, in order to have the injunction dissolved.  Moreover, it does not appear that the Railroads made any kind of offer in this regard until the case was tried on March 18, months after the TRO was sought and issued. Under these circumstances, where damages arose due to the delay caused by the restraining order and injunction, we believe Rule 65.05 authorizes recovery.

The Railroads further argue that damages are inappropriate because they commenced the underlying action "in the interest of both parties" so that the issue of the width of the right-of-way could be resolved.  They also assert that "the injunction was issued as much for  . . . [the Harakases'] protection as for the plaintiffs'."  The Railroads' counsel stated that:

> Except for the fact that when this started we did not consider asking for the restraining order as being anything against their interest because -- I mean, let's concede for the point of argument that if it's property that's not presently being used for railroad purposes they can build a house on it.  But they've got a horrible cloud on the title . . . . Who's going to buy that house or who's going to ever finance a house like that if a railroad can decide we want to put a spur there or water tank there, or if it's a safety hazard for a house to be that close to the track at this particular location. . .

These arguments ignore the purpose of Rule 65.05: to reimburse an enjoined party for harm suffered due to an improvidently requested and issued injunction.  Without questioning the sincerity of the Railroads' concern regarding encroachment on what it presumed to be its right-of-way, the issue of the use of the land could have been determined in a declaratory judgment action seeking permanent injunctive relief without the extraordinary remedy of restraining the Harakases from further construction during the pendency of the litigation.  Even when faced with evidence that the deed originally relied on was not applicable to the land at issue, the Railroads continued to resist the lifting of the injunction.  While we agree with both the Railroads and the trial court that the Harakases would have been at risk of losing additional time and money expended in further construction of the house, once they were put on notice of the Railroads' claims, we cannot agree that restraining them

---

[7]*See Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d 904, 909 (Tenn. 1992) ("An easement merely gives to a railroad company a right-of-way in the land -- that is, the right to use the land for its purposes.  This includes the right to employ the land taken for the purposes of constructing, maintaining, and operating a railroad thereon.  Under this right, the company has the free and perfect use of the surface of the land so far as is necessary for all its purposes, and the right to use as much above and below the surface as may be needed . . . . The former proprietor of the soil still retains the fee of the land and his right to the land for every purpose not incompatible with the rights of the railroad company.").

from proceeding in face of those risks was an appropriate burden for the Railroads to undertake for the Harakases' own good. We cannot agree that prohibiting the Harakases from continuing to build was in their best interest, but even if it had been, we think the Harakases were entitled to make their own decision regarding their best interests as long as they did not infringe on the Railroads' rights or threaten irreparable harm. The Harakases could just as easily argue that they acted in the Railroads' best interest in seeking to have the injunction dissolved while the Railroads risked liability on the injunction bond. In any event, we are not persuaded that the "acting in the other party's best interest" argument is relevant to the issue of whether a party was wrongfully restrained.

Recovery on an injunction bond does not require a showing of bad faith by the party seeking and obtaining the injunction.

> The bond requirement as a prerequisite for interlocutory injunctions is more than a provision for securing otherwise recoverable damages incurred by an enjoined party. Under such traditional tort remedies as an action for malicious prosecution or abuse of process, a person who suffers damages as a result of litigation may be unable to recover because of his inability to make a sufficient showing of the elements of a tort. The bond required under Rule 65.05, therefore, provides an enjoined party with a remedy against the bond itself even though the party who obtained the injunction otherwise had no personal liability. . . . Recovery generally does not require a showing that the party who obtained the injunction acted maliciously or tortiously, but only that the party enjoined was deprived of rights to which he was entitled and the injunction was, therefore, erroneous.

Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* §4-3(l) (1999). In *Taylor v. Morris*, No. 01A01-9804-CH-00211, 1999 WL 675138 (Tenn. Ct. App. Sept. 1, 1999) (no Tenn. R. App. P. 11 application filed), this court recently discussed the two types of actions available for wrongful injunctions and made clear that in an action on an injunction bond "the defendant in the original injunction suit need only show that he was wrongfully restrained or enjoined," distinguishing those elements necessary for recovery from the requirements applicable to the other type of action. *Taylor*, 1999 WL 675138 at *3. "The second type of wrongful injunction action is in the nature of a malicious prosecution action. In order to recover under this theory, the defendant in the original injunction action must show not only that he was wrongfully restrained or enjoined, but that the plaintiff acted maliciously and without probable cause in seeking the injunction." *Id.* (citations omitted). Thus, the fact that the Railroads may have acted in good faith is not sufficient to relieve them of liability in this action on the injunction bond.

Similarly, we cannot accept the Railroads' contention that the Harakases are entitled to only nominal damages. For this proposition, the Railroads rely solely on *Southern Ry. Co. v. Pardue*, 123 Tenn. 376, 131 S.W. 862 (1910). In that case, the defendant, who was enjoined from constructing a building on the land at issue, testified that he discontinued his project due to the commencement of the lawsuit, because he wanted the title settled before he improved the property. Based on this testimony, this court reasoned that the defendant was not deterred from building by the injunction,

9

"but by the fact of the adverse claim, and by the suit itself; that is to say, after he was made aware of the controversy he would not have built, or proceeded further with his building operations, until that controversy over the title was settled by decree of the court." *Pardue*, 123 Tenn. at 379, 131 S.W.2d at 863. Because the wrongfully issued injunction did not cause the damages, the defendant was awarded only nominal damages. *See id.,* 123 Tenn. at 379, 131 S.W.2d at 863-64. Thus, *Pardue* simply stands for the well-settled proposition that damages are limited to those actually caused by the injunction. *See Diversified Equities, Inc.*, 617 S.W.2d at 172; *Widdicombe v. McGuire*, 221 Tenn. 601, 608, 429 S.W.2d 815, 818 (1968). Here, the Harakases have presented evidence through Sara Harakas's affidavit that their damages arose from the operation of the injunction itself, and not because they chose to cease construction, and they have claimed actual damages. *Pardue* does not limit their recovery to nominal damages.

Finally, the Railroads contend that attorney's fees may not be awarded as damages, relying on *Stringfield v. Hirsch*, 94 Tenn. 425, 29 S.W. 609 (1895). In that case, our Supreme Court stated:

> We think that the analogies of the law, as well as the soundest public policy, demand that counsel fees in suits upon contracts, or for damages for torts, or upon attachments or injunctions, should not be regarded as a proper element of damages, even where they are capable of being apportioned so as to show the amount incurred for the attachments and injunctions as separate and distinct from the other services necessary in the case. It is not sound public policy to place a penalty on the right to litigate; that the defeated party must pay the fees of counsel for his successful opponent in any case, and especially since it throws wide the doors of temptation for the opposing party and his counsel to swell the fees to undue proportions, and, in cases of attachment and injunction, to apportion them arbitrarily between the fees pertaining properly to the attachment and injunction and those relating to the merits of the case.

*Stringfield,* 94 Tenn. at 437-38, 29 S.W. at 613. There are no Tennessee cases since *Stringfield* altering the rule established therein, and the federal courts also decline to award attorney's fees under Fed. R. Civ. P. 65(c).[8] Thus, the Harakases are not entitled to recover their attorney's fees from the injunction bond. However, they have presented evidence of almost $10,000 in losses arising from the wrongfully issued injunction, excluding attorney's fees, while the bond was for $5,000. Since we have determined that the Harakases are entitled to damages resulting from the restraining order and temporary injunction and are entitled to enforce the injunction bond, we remand to the trial court to determine the proper amount of damages.

Accordingly, we reverse the trial court's denial of the Harakases' motion to enforce liability on the injunction bond. This case is remanded for a determination of damages and for such further proceedings as may be necessary. Costs of this appeal are taxed against Appellees, South Central

---

[8] *See Missouri, Kansas & Texas Ry. Co. v. Elliott*, 184 U.S. 530, 539, 22 S.Ct. 446, 450, 46 L.Ed. 673 (1902); *Tullock v. Mulvane,* 184 U.S. 497, 510, 22 S.Ct. 372, 377, 46 L.Ed. 657 (1902); *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.,* 436 F.2d 1345, 1352 (10th Cir. 1971).

Tennessee Railroad Authority and South Central Tennessee Railroad Company, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE