IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2018 Session

**LARRY E. PARRISH, P.C. v. NANCY J. STRONG**

**Appeal from the Chancery Court for Lincoln County**
**No. 13039      J. B. Cox, Chancellor**

_____

**No. M2017-02451-COA-R3-CV**

_____

A professional corporation through which a lawyer practiced law brought suit against a former client seeking to recover the "res" transferred to the corporation under an assignment of chose-in-action executed by the client as a means of paying fees owed to the corporation for its representation of the client in a legal malpractice action. The client counterclaimed for breach of contract. A jury found in favor of the client and awarded her compensatory and punitive damages. We find in favor of the client on all issues raised by the corporation. As to the client's issues, we find that the trial court erred in failing to require the corporation to file a bond with regard to the injunction restraining the client from using certain funds during the pendency of the litigation and in failing to hold a hearing on the issue of piercing the corporate veil.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Reversed in Part, and Vacated and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined and W. NEAL MCBRAYER, J., filed a separate opinion concurring in part and dissenting in part.

Kevin W. Weaver, Cordova, Tennessee, and Larry E. Parrish, Memphis, Tennessee, for the appellant, Larry E. Parrish, P.C.

Larry E. Parrish, Memphis, Tennessee, pro se.

Timothy T. Ishii, Nashville, Tennessee, for the appellee, Nancy J. Strong.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In the words of the trial court, "[t]he procedural nightmare and associated complications of this litigation cannot be overstated." We will attempt to summarize the relevant facts without unnecessarily investigating dusty shadows.

Larry E. Parrish, P.C. ("LEP" or "the Corporation"), was a professional corporation of lawyers, including Larry E. Parrish. Nancy J. Strong, a non-lawyer, was in a partnership dissolution dispute with Paul Braden, who filed suit against her. Attorney John Baker, III, represented Ms. Strong in that case. Ms. Strong was not satisfied with the trial court's ruling, terminated Mr. Baker's services, and hired attorney Donald Capparella to represent her on appeal. On December 30, 2004, during the pendency of the first appeal, Ms. Strong entered into a retainer agreement with Mr. Parrish of LEP to pursue a legal malpractice action against Mr. Baker. The legal malpractice action against Mr. Baker and his firm was filed in January 2005.

The following pertinent facts are taken from the first of the two previous appellate opinions written in this case:

> Mr. Parrish failed to comply with deadlines in the scheduling order, most significantly the deadline to disclose expert witnesses by December 31, 2005. In August 2006, Mr. Parrish told Ms. Strong that he would file a motion with the trial court in the legal malpractice action to withdraw as her attorney unless he received payment of past due fees and reimbursement of advance expenses. She made a partial payment and, as of September 21, 2005, Ms. Strong had paid $38,371.92 in attorney's fees to Parrish.
>
> Several months later, in February of 2006, John Baker filed a motion to summarily dismiss the legal malpractice action, asserting that his conduct had not breached the standard of professional practice for attorneys. . . .
>
> The cross motions for summary judgment were heard on August 23, 2006. At the time of the hearing, Mr. Parrish had failed to file an expert affidavit on behalf of Ms. Strong that addressed the standard of professional practice for attorneys. Following arguments, the court granted summary judgment to John Baker upon the finding there were no genuine issues of material fact due in principal part to the fact there was no expert testimony to establish a breach of the standard of care. Thus, Ms. Strong's legal malpractice claim against Mr. Baker was summarily dismissed.

On the same day as the dismissal of the legal malpractice claim, Mr. Parrish recommended to Ms. Strong that a motion to alter or amend be filed. During the same discussion, Mr. Parrish presented Ms. Strong with a document entitled "Assignment Of Chose-In-Action," pursuant to which Ms. Strong would be assigning the rights and entitlements from her suit in the partnership dissolution action to "secure payment and reimbursement of money advanced to defray costs and expenses" in accordance with the retainer agreement previously entered. It stated the "maximum principle indebtedness" from the assignment was $50,000. It also provided that if a dispute arose, the "prevailing party" would be assessed attorney's fees and costs. Whether Mr. Parrish advised Ms. Strong that she had the right to or should seek independent advice regarding the chose-in-action is disputed. Five days later, on August 28, 2006, Ms. Strong signed the chose-in-action without consulting an attorney and delivered it to Mr. Parrish.

*Larry E. Parrish, P.C. v. Dodson*, No. M2011-00349-COA-R3-CV, 2011 WL 4529607, at *2 (Tenn. Ct. App. Sept. 29, 2011). The trial court denied Ms. Strong's motion to alter or amend, and the trial court's decision was affirmed by this Court. *Strong v. Baker*, No. M2007-00339-COA-R3-CV, 2008 WL 859086, at *1 (Tenn. Ct. App. Mar. 31, 2008).

On March 16, 2009, LEP filed the instant lawsuit against Ms. Strong (and others not relevant here), styled in part: "Sworn In Rem Complaint to Trace and Recover Res and for Other Equitable Relief." The Corporation claimed entitlement "to immediate and exclusive actual possession, dominion and control of the Res," and the Res was defined to be $116,316.35 in principal and interest transferred to LEP pursuant to the "Assignment of Chose-In-Action" executed on August 28, 2006. As part of the relief sought, LEP requested that the court "declare, mandate and adjudge" its rights in the Res and require the non-party respondents, including Ms. Strong, to turn the Res over to LEP or deliver it to the registry of the court. Ms. Strong filed an answer to the complaint as well as a counter-complaint. The Corporation responded with a motion to strike Ms. Strong as a party. In August 2009, the trial court entered an order of voluntary dismissal on Ms. Strong's counterclaims for legal malpractice and violations of the Tennessee Consumer Protection Act.

Eventually, the parties filed motions for summary judgment and, in a final judgment entered on May 18, 2010, the trial court granted Ms. Strong's motion based upon its finding that a majority of the contract was unconscionable. The trial court awarded Ms. Strong her attorney fees and costs, but found that the portion of the contract awarding LEP $50,000 plus interest was not unconscionable.

On appeal to this court, LEP argued that Ms. Strong was not a party to the proceedings, but only a non-party respondent. In September 2011, this court, in *Larry E. Parrish, P.C. v. Dodson*, held that Ms. Strong was a necessary party due principally "to

the fact [LEP] sought to obtain judicial relief against her in its complaint." *Larry E. Parrish, P.C.*, 2011 WL 4529607, at *9. Although no summons had been issued or served, the court found that Ms. Strong had waived service of process by filing her answer and counter-complaint. *Id.* at *10. As to both motions for summary judgment, this court found there were genuine issues of material fact and held that the trial court erred in granting partial summary judgment to either party. *Id.* at *12-13. The case was remanded for a hearing on the merits. *Id.* at *13.

On March 27, 2012, the trial court, based upon the mandate issued by this court, dismissed LEP's motion for summary judgment. The case was bifurcated and tried before a jury. During the first phase of the trial, the jury determined that the parties had a valid agreement and that LEP breached the contract. This court described the subsequent proceedings as follows:

> The jury awarded Ms. Strong compensatory damages to reimburse her for attorney's fees and costs of the action. The court reduced the jury's compensatory damages verdict to judgment of $194,978.70 on November 4, 2014. In addition to compensatory damages, the jury also found that Ms. Strong was entitled to punitive damages, the amount of which would be determined in the second phase of the bifurcated trial.
>
> Before the second phase of the trial was set, Ms. Strong filed various motions in an attempt to pierce the corporate veil, so as to have Mr. Parrish held personally liable for the damages assessed against his firm. Ultimately, the trial court denied Ms. Strong's motions to pierce the corporate veil. However, by the time the veil question had been adjudicated, twelve months had expired since the jurors were first summoned for jury service. Ms. Strong moved the trial court to reconvene the jury that had decided the first phase of the case so that it could also decide the amount of punitive damages. By order of December 12, 2015, the trial court held that it did not have jurisdiction to re-empanel the same jury.

*Larry E. Parrish, P.C. v. Strong*, No. M2015-02495-COA-R9-CV, 2016 WL 5888935, at *1 (Tenn. Ct. App. Oct. 7, 2016).

This court granted an interlocutory appeal to answer several questions, including whether the trial court "may require the jurors . . . to reconvene for the punitive damages stage of the proceedings even though more than twelve months have passed since the date of their summons was served." *Id.* at *2. The court ultimately concluded, in October 2016, based upon the parties' concession at oral argument, that this issue was no longer in dispute. *Id.* at *3. The parties agreed "that the trial court had not erred in declining to reconvene the jury that decided the first phase of the bifurcated trial for the purpose of

- 4 -

determining the amount of punitive damages in the second phase" because it did not have the power to do so under Tenn. Code Ann. § 22-1-101. *Id.* The trial court did not decide the remaining issues presented to this court. Therefore, this court determined that all three issues before it were "outside the scope of appellate review" and dismissed the appeal. *Id.* at *5.

In August 2017, a second jury awarded Ms. Strong two million dollars in punitive damages against LEP, finding that LEP had intentionally falsified, destroyed, or concealed records containing material evidence with the purpose of wrongfully evading liability in this case. The trial court affirmed the award as reasonably supported by the proof.

ISSUES ON APPEAL

The appellant, LEP, has raised ten issues in this appeal. In the interest of thoroughness, we list them all:

1. Whether the trial court committed reversible error by its entry of the May 17, 2016 order denying LEP's May 4, 2009 motion to strike.

2. Whether Ms. Strong's August 13, 2009 nonsuit combined with the circuit court complaint removes all claims for relief purported to be stated in her March 30, 2009 answer/counterclaim.

3. Whether, when the November 22, 2010 order of dismissal was signed, the one-year savings statute accrued.

4. Whether the trial court reversibly erred by the March 27, 2012 order denying LEP's February 13, 2012 motion for summary judgment.

5. Whether the trial court reversibly erred by the March 14, 2014 order denying LEP's December 26, 2013 motion for summary judgment.

6. Whether, because the jurors constituting the 2014 jury were disqualified, without being discharged, before the jury completed its deliberations, the empaneling of the 2014 jury was an idle gesture that accomplished nothing of legal consequence.

7. Whether the trial court reversibly erred by treating *ipse dixit* and dicta from the 2011 Court of Appeals opinion as if it were the law of the case and proceeding to adjudicate as if bound thereby.

8.  Whether the trial judge, in the disposition of LEP's motion for judgment notwithstanding the verdict, by expressing agreement with the finding of the 2014 jury, disqualified itself from thereafter presiding in the case, including empaneling a second jury and holding a trial.

9.  Whether the trial court reversibly erred by its order denying LEP's September 19, 2014 motion for judgment notwithstanding the verdict.

10.  Whether the trial court reversibly erred by its final order.

Ms. Strong, the appellee, has raised the following additional issues:

A.  Whether, as a matter of public policy, Tennessee case law precedent should be extended to toll the applicable professional malpractice statute of limitations when the professional is the plaintiff.

B.  Whether the trial court erred in continuing to enforce an injunctive order without the requisite surety bond being filed by the requesting party.

C.  Whether the trial court erred in not allowing Ms. Strong, as the prevailing party, to be awarded all of her costs during the pendency of the litigation, as provided by the parties' contract.

D.  Whether the trial court erred in its final order of March 2, 2017, in which it gave LEP credit towards the judgment against it out of the funds held by the chancery court clerk, which are the property of Ms. Strong.

E.  Whether the trial court erred in not granting Ms. Strong's motion to pierce the corporate veil.

ANALYSIS

Part I—Appellant's Issues.

(1)

The Corporation first argues that the trial court erred by its entry of the May 17, 2016 order denying LEP's May 4, 2009 motion to strike.  In this section of the Corporation's brief, which represents the heart of its appeal, LEP rehashes the same argument that this court rejected in the 2011 appeal, namely that Ms. Strong is not a party to these *in rem* proceedings.

For reasons not clear to this court, on April 19, 2016, LEP sought a ruling on its motion to strike Ms. Strong as a party--a motion it initially made on May 4, 2009, in response to Ms. Strong's answer to LEP's original petition in this case. In a succinct order denying LEP's motion to strike, the trial court stated: "The Tennessee Court of Appeals ruled that Ms. Strong is a necessary party to the instant action in their Opinion rendered September 29, 2011."

We turn to our previous opinion, wherein we noted that LEP filed a motion to dismiss the appeal for lack of jurisdiction prior to oral argument based upon its assertion that Ms. Strong was "not a party to this action, merely a 'non-party respondent'; thus, it asserted, she has no right to challenge the Corporation's efforts to collect the res." *Larry E. Parrish, P.C. v. Dodson*, 2011 WL 4529607, at *8. Having denied this motion, we proceeded to explain our reasoning. We quoted portions of LEP's complaint in which it sought to obtain judicial relief against Ms. Strong and discussed case law stating that a court's authority to issue mandatory orders does not extend to non-parties. *Id.* at *9. Our analysis continued:

> Accordingly, the trial court in this action would have had no power and no jurisdiction to grant the Corporation the relief it sought in paragraphs 8, 9, 10, 11, and 12 of its Complaint unless Ms. Strong was a party to the action. The Corporation, however, failed to prepare a summons for Ms. Strong, thereby thwarting the issuance or service of summons on her. As a consequence, she would not have been subject to personal jurisdiction without such service of process; however, Ms. Strong waived service of process by filing an Answer and Counterclaim. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)[1] (holding that a court's lack of personal jurisdiction may be waived and "one method of waiver is by making a voluntary 'general appearance' before the court in order to defend the suit on the merits, . . ."); *see also Dixie Savings Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988). Accordingly, Ms. Strong acquiesced to the jurisdiction of the court.
>
> For the above reasons, we find the Corporation's assertion that Ms. Strong is not a party to this action without merit, and as a party, Ms. Strong has standing to pursue this appeal.

*Id.* at *10.

---

[1] The Corporation, in its brief, misapprehends the significance of *Landers v. Jones* and conflates personal jurisdiction and subject matter jurisdiction. Subject matter jurisdiction cannot be waived. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Personal jurisdiction, however, may be waived. *Id.* Personal jurisdiction may be obtained by service of process or by a party's voluntary general appearance in a case. *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988).

Res judicata, or claim preclusion, "'bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit.'" *Boyce v. LPP Mortg. Ltd.*, 435 S.W.3d 758, 764 (Tenn. Ct. App. 2013) (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). In light of our previous opinion, under principles of res judicata, there is no merit to LEP's argument here.

(2)

The Corporation next asserts that Ms. Strong's August 13, 2009 nonsuit combined with a circuit court complaint removes all claims for relief purported to be stated in her March 30, 2009 answer/counterclaim.

A little history is necessary to understand LEP's position here. In her answer and counterclaim filed on March 30, 2009, Ms. Strong included counterclaims against "counter-defendant Parrish" for breach of contract, legal malpractice, and violation of the Tennessee Consumer Protection Act. She amended her counter-complaint on April 6, 2009. The nonsuit order at issue here was filed on August 18, 2009, in the trial court and states that Ms. Strong made application under Tenn. R. Civ. P. 41 for a voluntary dismissal without prejudice on her counterclaim "as it addresses legal malpractice and the application of the Tennessee Consumer Protection Act." The trial court ordered "that a voluntary dismissal is hereby entered on the claim for legal malpractice against the plaintiff, Larry Parrish, P.C. and the application of the Tennessee Consumer Protection Act." On August 13, 2010, Ms. Strong filed a "Complaint for Legal Malpractice" in the circuit court against LEP and Larry Parrish, individually. Ms. Strong dismissed her complaint in circuit court on November 29, 2010.

The Corporation now argues that Ms. Strong lost the right to pursue her breach of contract claim. As the basis for this position, LEP relies upon the prohibition on splitting causes of action, one of the principles embedded in the doctrine of res judicata. *See Hawkins v. Dawn*, 347 S.W.2d 480, 481-82 (Tenn. 1961). We believe, however, that LEP misapplies the prohibition on splitting causes of action in this case. As applied to plaintiffs, the doctrine against splitting causes of action prevents them "from fragmenting their accrued claims by litigating part of them to a final judgment and then filing a second suit against the same defendant on alternate claims or theories." *Lowe v. First City Bank of Rutherford Cnty.*, No. 01-A-01-9305-CV00205, 1994 WL 570082, at *3 (Tenn. Ct. App. Oct. 19, 1994). The rule does not, however, operate prospectively; it operates only as "'an estoppel after judgment.'" *Henegar v. Int'l Minerals & Chem. Corp.*, 354 S.W.2d 69, 70-71 (Tenn. 1962) (quoting *Phillips v. U.S.*, 102 F. Supp. 943, 948 (E.D. Tenn. 1952)). Thus, the rule against splitting a cause of action precludes the second action, not the first. *In re Linebaugh*, No. 03A01-9309-JV-00310, 1994 WL 17074, at *4 (Tenn. Ct. App. Jan. 24, 1994).

In this case, Ms. Strong's circuit court action was dismissed after three months and never went to trial. Thus, it never had any preclusive effect upon the action in the trial court.[2]

Furthermore, we find no evidence in the record that LEP raised this issue before the trial court or this court prior to this appeal. In *Larry E. Parrish, P.C. v. Dodson*, filed on September 29, 2011, we stated: "Ms. Strong's claim for breach of contract remained." *Larry E. Parrish, P.C. v. Dodson*, 2011 WL 4529607, at \*4. In its brief in this case, the Corporation reasons that this court's understanding of the facts should be ignored:

> There is no mention nor acknowledgment that this Court, at the time of the 2011 COA Opinion, had any knowledge concerning the existence of the Circuit Court Complaint. Therefore, the mention in the 2011 COA Opinion that Appellee, after the August 18, 2009 nonsuit in the trial court below, Appellee retained a breach of contract claim neither adjudicates nor even comments, by *dicta*, on the legal effect and consequences of the Circuit Court Complaint.

The Corporation neglected to advise this court of the existence of the circuit court proceedings at any point during the pendency of the *Larry E. Parrish, P.C. v. Dodson* appeal despite its apparent belief that the existence of the circuit court action had dire consequences for Ms. Strong's breach of contract claim. This court determined, in part, that summary judgment was not appropriate on Ms. Strong's breach of contract claim, and the case was remanded for further proceedings. Since that time, there has been a jury trial, another appeal, and an award of punitive damages.

Res judicata is based upon a "'public policy [that] dictates that litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel.'" *In re Linebaugh*, 1994 WL 17074, at \*4 (quoting *Nat'l Cordova Corp. v. City of Memphis*, 380 S.W.2d 793, 796 (Tenn. 1964)). This objection to Ms. Strong's breach of contract counterclaim is precluded by res judicata.

(3)

The Corporation's argument regarding the savings statute and the dismissal of the circuit court case is intermingled with and relies upon its erroneous reasoning regarding splitting a cause of action. We find no merit in this argument.

---

[2] Tennessee Rule of Civil Procedure 13 would apply to determine what counterclaims must be brought together.

(4)

The Corporation asserts that the trial court reversibly erred in its March 27, 2012 order denying LEP's February 13, 2012 motion for summary judgment. This argument is part of its argument with respect to issues one through three, which led LEP to the erroneous conclusion that Ms. Strong's breach of contract claim is not viable. Having rejected that conclusion, we also reject LEP's assertion that the trial court erred in denying its motion for summary judgment.

(5)

Next, LEP argues that the trial court reversibly erred by denying its December 26, 2013 motion for summary judgment in a March 14, 2014 order.

In its brief, the Corporation's entire argument on this issue consists of the following sentence: "Appellee failed to file an opposition motion or to file a Rule 56.03 statement of undisputed material facts." The Corporation does not provide any argument or explanation as to how the trial court allegedly erred in denying LEP's motion for summary judgment or why the Corporation was entitled to such relief.

It is not the role of this or any court "to research or construct a litigant's case or arguments for him." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). A court may deem an issue waived "when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012); *see also Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure to cite to any legal authority or to fashion an argument constitutes waiver of an issue). In short, LEP's argument does not comply with Rule 27 of the Tennessee Rules of Appellate Procedure or Rule 6 of the Rules of the Tennessee Court of Appeals. We deem this issue waived.

(6)

The Corporation's sixth issue is whether, because the jurors constituting the 2014 jury were disqualified, without being discharged, before the jury completed its deliberations, the empaneling of the 2014 jury was an idle gesture that accomplished nothing of legal consequence. Regarding this issue, LEP's argument consists of the following reference: "*Supra* 100-101." These pages are part of the fact section of the brief. For the reasons explained under the fifth issue above, we consider this issue waived.

(7)

The Corporation's seventh argument is that the trial court erred by treating dicta from our 2011 opinion as if it were the law of the case and adjudicating as if bound by it. The Corporation's support in its brief for this argument is the following two sentences:

> The 2011 COA Opinion states that an assignment is a contract. Controlling precedent, then and now, is that an assignment is not a contract. *Collier v. Greenbrier Developers LLC*, 358 S.W.3d 195, 200 (Tenn. Ct. App. 2009) perm. app. den. May 13, 2009.

This statement, standing alone, does not constitute an argument. As stated above, it is not the role of this Court to fashion arguments for litigants. This issue is waived.

(8)

The Corporation argues that the trial judge, in disposing of LEP's motion for judgment notwithstanding the verdict, by expressing agreement with the finding of the 2014 jury, disqualified itself from thereafter presiding in the case, including empaneling a second jury and holding a trial. We disagree.

The jury returned a verdict finding that there was a contract between LEP and Ms. Strong, that LEP breached the contract, and that there should be an award of punitive damages (the amount to be determined at a separate proceeding).[3] The Corporation filed a motion for judgment notwithstanding the verdict, which the court heard on September 30, 2014, and denied in an order entered on October 14, 2014. At the same hearing, on September 30, 2014, the trial court fulfilled its role as thirteenth juror and stated as follows:

> The court as thirteenth juror, based on the evidence adjudicated to date, even though the punitive damage phase of the trial has not occurred, is not comfortable overruling the jury's verdict. In fact, the court endorses the jury's verdict as the thirteenth juror. The court has weighed the evidence consistent with its duty as thirteenth juror and it will not set the verdict aside.

Our courts recognize "the duty of a trial judge to act as a thirteenth juror in a civil trial in Tennessee." *Holden v. Rannick*, 682 S.W.2d 903, 904-05 (Tenn. 1984). The rule has been described as follows:

---

[3] Prior to trial, the parties agreed that the amount of compensatory damages would be "the amount of attorney fees and costs related to the breach of the contract." The court would review the fees for reasonableness.

"[T]his is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside."

*Id.* at 905 (quoting *Cumberland Tel. & Tel. Co. v. Smithwick*, 79 S.W. 803, 804 (Tenn. 1904)).

Contrary to LEP's assertion, the trial court acted properly in expressing its opinion concerning the jury verdict.

(9)

In asserting that the trial court reversibly erred by denying LEP's September 19, 2014 motion for judgment notwithstanding the verdict, the Corporation states only that "Appellee failed to file an opposition motion or to file a Rule 56.03 statement of undisputed material facts." We deem this issue waived.

(10)

In its final argument, the Corporation states: "All that proceeded to produce the Final Order created errors which makes [sic] the Final Order erroneous." For the reasons already discussed above, we conclude that this issue is waived.[4]

Part II—Appellee's Issues.

(A)

The first issue Ms. Strong raises is a question of public policy—whether Tennessee law should allow for the tolling of the professional malpractice statute of limitations when the professional is the plaintiff. Under well-settled principles of justiciability, "the role of the court is to adjudicate and settle legal rights, not to give abstract or advisory opinions." *Thomas v. Shelby Cnty.*, 416 S.W.3d 389, 393 (Tenn. Ct. App. 2011). We need not decide this issue in order to adjudicate the case before us. Therefore, we decline to address it.

---

[4] The Corporation also filed a motion in this Court entitled "Motion for Court to Adjudicate Lack of Court's Appellate Jurisdiction for Failure of Trial Court to Enter a Judgment to be Reviewed." After a careful consideration of this motion and the supporting memorandum, we conclude that the motion lacks merit and we hereby deny it.

- 12 -

(B)

Ms. Strong next argues that the trial court erred in continuing to enforce the injunction staying disbursement of partnership funds despite LEP's failure to file the mandatory surety bond.

In accordance with the prayer in the Corporation's complaint, the trial court heard the Corporation's application for injunctive relief on March 17, 2009. At that hearing, the law firm of Mr. Capparella (Dodson, Parker, Behm & Capparella, P.C.), who represented Ms. Strong in the appeal of her partnership dissolution case, confirmed that the firm held $261,361.84 (hereinafter, "the Fund"), which funds were not to be disbursed until the various parties' claims to the money had been resolved. The trial court ordered, in pertinent part, as follows:

> ORDERED, ADJUDGED AND DECREED that, until further order of the Court to the contrary, Respondent Firm hereby is enjoined from disbursing or otherwise dispossessing itself of dominion and control over the Fund. It is
>
> FURTHER ORDERED, ADJUDGED AND DECREED that the injunction stated in the immediately preceding paragraph shall become effective immediately on the posting of a surety bond by Plaintiff in the amount of $116,000.

Mr. Capparella subsequently deposited the Funds with the clerk and master and was dismissed from the law suit. The record reflects that the Corporation never posted a bond.

The trial court's requirement that LEP post a bond is consistent with Tennessee Rule of Civil Procedure 65.05, which addresses injunction bonds:

> (1) Except in such actions as may be brought on pauper's oath, no restraining order or temporary injunction shall be granted except upon the giving of a bond by the applicant, with surety in such sum as the court to whom the application is made deems proper, for the payment of such costs and damages as may be incurred or suffered by any person who is found to have been wrongfully restrained or enjoined. The address of the surety shall be shown on the bond.
> (2) A surety upon a bond under the provisions of this Rule submits to the jurisdiction of the court. The surety's liability may be enforced on motion without the necessity of an independent action. The motion shall be served on the surety as provided by Rule 5 at least 20 days prior to the date of the hearing thereon.

(3) A party restrained or enjoined may move the court for additional security; and if it appear on such motion that the surety is insufficient or the amount of the bond is insufficient, the court may vacate the restraining order or temporary injunction unless within a reasonable time sufficient security is given.

Thus, unless one is a pauper, Tennessee law requires the posting of a bond before one is entitled to an injunction. The reason for the bond requirement "as a condition precedent to the issuance of a restraining order or preliminary injunction is 'to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order.'" *S. Cent. Tenn. R.R. Auth. v. Harakas*, 44 S.W.3d 912, 916 (Tenn. Ct. App. 2000) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999)).

After the jury entered a verdict in favor of Ms. Strong, but before a determination regarding the amount of punitive damages, Ms. Strong filed a "Motion for Disbursement of the Monies Held in this Matter." In an order entered on October 26, 2015, the trial court granted the motion in part and ordered that the attorney's lien filed by the Corporation be quashed; the court denied the motion in all other respects. The trial court declined to require the Corporation to post a bond consistent with its earlier order.

A party who has been wrongfully restrained or enjoined is entitled to seek damages up to the amount of the bond. *See Harakas*, 44 S.W.3d at 916-17. Cases interpreting Federal Rule of Civil Procedure 65(c), which is essentially identical to the Tennessee rule, state that "'a party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing.'" *Id.* at 917 (quoting *Nintendo of Am. v. Lewis Galoob Toys*, 16 F.3d 1032, 1036 (9th Cir.), *cert. denied*, 513 U.S. 822 (1994)). Part of the rationale behind having such a bond is to discourage a party from seeking an injunction for tenuous reasons. *Id.* at 918.

We know of no exception relieving the Corporation from the bond requirement, thereby leaving Ms. Strong without protection in the event she prevailed and the court determined that she had been wrongfully restrained or enjoined. We conclude that the trial court erred in enforcing the injunction despite the Corporation's failure to pay the bond. Therefore, the injunction should be dissolved.

(C)

Ms. Strong asserts that trial court erred in not awarding her, as the prevailing party, prejudgment interest as well as post-judgment interest.

- 14 -

Tennessee Code Annotated section 47-14-123, which governs prejudgment interest, states:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, *may* be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.[5]

(Emphasis added). A trial court's decision whether to award prejudgment interest is a matter of discretion, and "we will not disturb the trial court's determination absent 'a manifest and palpable abuse of discretion.'" *Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 919 (Tenn. Ct. App. 2014) (quoting *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998) (citations omitted)).

The purpose of prejudgment interest is not to punish, "but to fully compensate a prevailing plaintiff for the loss of the use of those funds to which he was entitled." *Id.* In determining whether to award prejudgment interest, a trial court may consider equitable principles:

> Some of the equitable principles which may be considered include whether the amount owed by the defendant was easily ascertainable, whether the plaintiff unreasonably delayed filing suit, whether the plaintiff delayed the proceedings after filing the action, whether the defendant had full access to and use of the money, and whether the plaintiff has been otherwise compensated for the loss of use of the funds.

*Id.* (citing *Scholz v. S.B. Intern., Inc.,* 40 S.W.3d 78, 84 (Tenn. Ct. App. 2000)).

In its November 4, 2014 order setting compensatory damages, the trial court made the following award of interest:

> The Court further finds that interest accruing on $50,000.00 at the rate of 10% compounded annually from August 10, 2006 through August of 2014,

---

[5] The Assignment of Chose-in-Action agreement provides for an interest rate of ten percent (10%) per annum, compounded annually.

totaling $57,179.44 should be included as part of the total compensatory damage award.

The $50,000.00 figure is the agreed amount of the original debt between LEP and Ms. Strong for which the chose-in-action was to be the payment. We cannot say that the trial court erred in making this amount, and only this amount, subject to pre-judgment interest.

With respect to post-judgment interest, Tennessee Code Annotated section 47-14-122 provides: "Interest *shall* be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial." (Emphasis added). The language of section 47-14-122 is mandatory. *Clark v. Shoaf*, 302 S.W.3d 849, 859 (Tenn. Ct. App. 2008) (citing *Ali v. Fisher*, 145 S.W.3d 557, 565 (Tenn. 2004)). The trial court entered its final order, incorporating all damages, including punitive damages, on November 14, 2017, for a total award of $2,293,878.70. In a footnote, the trial court noted: "Interest shall continue to accrue on said award(s) according to applicable contract or statute." Thus, in accordance with the trial court's order, the judgment against LEP is subject to post-judgment interest.

### (D)

Ms. Strong next argues that the trial court erred, in its final order of March 2, 2017, by giving LEP credit out of the Fund, which Ms. Strong asserts to be her property.

After the jury entered a verdict in favor of Ms. Strong, the case languished for over a year, and there was another appeal to this court. *See Larry E. Parrish, P.C. v. Strong*, 2016 WL 5888935, at *1. On remand, the trial court entered an order on March 2, 2017, to resolve the parties' disputes regarding whether there would be a jury trial on the issue of punitive damages. In that order, the trial court declined to bring the same jury back to consider punitive damages or to empanel a new jury. The court decreed that Ms. Strong's "punitive damages claim is DISMISSED for lack of prosecution." The trial court also held that Ms. Strong had "a valid, final judgment on her claim for compensatory damages, and [held] that the money being held by the Court, 'the Res,'" be released to [Ms. Strong] towards satisfaction of that judgment."

On appeal, Ms. Strong vigorously objects to the latter decree by the court on the grounds that the money being held by the clerk belongs to her and should not be used to satisfy LEP's judgment. We must point out, however, as acknowledged by Ms. Strong in her brief, that "No funds have ever been released from these stayed proceeds." In fact, the trial court reversed itself in an order entered on July 10, 2017, in which the court granted Ms. Strong's motion for a new trial and ordered a hearing on punitive damages. The trial court further provided that, "The stayed proceeds (being some $225,589.35 as of 05/26/17:13:35) being held by injunction, by the Lincoln County Chancery Court Clerk will remain in her possession until a final order is rendered in this cause of action."

In light of all of these circumstances, we need not address the issue raised by Ms. Strong because she has suffered no prejudice from the order about which she complains.

(E)

Finally, Ms. Strong argues that the trial court erred in failing to allow her to pierce LEP's corporate veil.

At trial in August 2014, LEP, through its agent Larry E. Parrish, testified that the Corporation had started "winding down." Ms. Strong subsequently learned that Mr. Parrish, as President of LEP, filed articles of dissolution with the Tennessee Department of State on May 8, 2014. On October 14, 2014, Ms. Strong filed a motion for substitution of parties pursuant to Tenn. R. Civ. P. 25.03 or, in the alternative, motion to hold Mr. Parrish personally liable for the obligations of LEP. After a hearing, in an order entered on January 27, 2015, the trial court denied Ms. Strong's motions. The court noted the procedural posture of the case—"after the close of the compensatory damages portion of the case, but before the case has concluded as to punitive damages." Because Ms. Strong has not assigned error to the trial court's denial of her motion to substitute Mr. Parrish as a party, we concern ourselves only with that part of the court's analysis related to piercing the corporate veil.

Discussing whether the jury should get to determine whether to pierce the corporate veil, the trial court reasoned as follows:

> In *Oceanics* [*Schools, Inc. v. Barbour*, 112 S.W.3d 135 (Tenn. Ct. App. 2003)] and *Boles* [*v. National Development Co., Inc.*, 175 S.W.3d 226 (Tenn. Ct. App. 2005)] the lawsuits giving rise to the urgings to pierce the corporate veil were not filed contemporaneously with the underlying actions. As stated in *Boles*:
>> Once a trial court has determined that an individual is a corporate entity's other self and a judgment against the corporate entity is in place, then there is also in place a judgment against the individual who is the corporate entity's other self. *Id.* at 251. Citing *Oceanics*, other citations omitted.
>> This same remedy is still available to Ms. Strong post judgment. This argument is made stronger given the fact that the filing of the articles of dissolution was not a fact made available to Ms. Strong before this trial was conducted. She can conclude the case and recover punitive damages against the P.C. and then, if she cannot collect against the P.C. and she can prove to a court that Mr. Parrish was the alter ego of the P.C., she may yet pierce the corporate veil and recover against Mr. Parrish individually. While this might not be the most efficient judicial use of resources, it

- 17 -

appears to the court to be the most responsible given the history of this case. There are no pleadings alleging alter ego or veil piercing with the initial counterclaim. There are no pleadings to bring Mr. Parrish in as a third party. There is only the motion to substitute him and pierce the veil that was filed after the conclusion of the jury's work on compensatory damages. All that should remain in the instant action is the determination of the appropriate amount of punitive damages to be assessed against Larry E. Parrish, P.C. This course of action in light of *Oceanics* is the only appropriate way the court sees of going forward.

This court is not saying that this matter is not a question of fact. Quite the opposite is true. Whether the veil should ultimately be pierced is indeed a fact question for a finder of fact, once that finder of fact, upon appropriate pleading, participation, notice and due process, determines, if it does, that Larry E. Parrish is the alter ego of Larry E. Parrish, P.C.

The trial court expressed due process concerns in its analysis regarding the substitution issue, and those same concerns seem to underlie its decision here. We believe, however, that the trial court's due process concerns are misplaced. Although we find no Tennessee cases on point, federal cases have held that it comports with due process for a court to exercise jurisdiction over an individual who is an alter ego of a corporation subject to the personal jurisdiction of the court. *See, e.g., Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) ("'Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual . . . that would not ordinarily be subject to personal jurisdiction in that court when the individual . . . is an alter ago . . . of a corporation that would be subject to personal jurisdiction in that court.'") (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 n.18 (5th Cir. 2002) (collecting cases)). When a person is deemed to be a corporation's alter ego, the two "are considered to be one and the same under the law: 'the corporation's acts must be deemed to be [the individual's] own.'" *Patin*, 294 F.3d at 654 (quoting *TDI Sys., Inc.*, 959 F. Supp. 192, 203 (S.D. N.Y. 1997)). The jurisdictional contacts of one serve as the jurisdictional contacts for the other for purposes of due process. *Id.* at 653.

Further, we find the trial court's reasoning regarding *Boles* unconvincing. In *Boles*, the plaintiffs amended their complaint twice during the litigation to add the alleged alter egos. *Boles*, 175 S.W.3d at 232. The trial was bifurcated: after the initial damages stage, a second hearing was held to determine whether to pierce the corporate veil. *Id.* at 236. In the present case, the trial court could have employed a similar procedure after the jury had awarded compensatory damages. The court likely anticipated that punitive damages would be awarded expeditiously. Instead, there was an appeal, and punitive damages were not awarded until 2017.

We vacate the trial court's decision regarding the piercing of the corporate veil and remand for a hearing and determination in accordance with the factors enumerated in the case law. *See Oceanics*, 112 S.W.3d at 140 (discussing the factors set forth *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)).

CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and vacated in part, and this matter is remanded for further proceedings consistent with this opinion.[6] The costs of appeal are assessed against the appellant, Larry E. Parrish, P.C., and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6] We believe this decision adequately addresses the substance of Ms. Strong's Tenn. R. App. P. 7 motion filed with this court on December 12, 2018. We, therefore, deny the motion.