IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 26, 2019 Session

## SONS OF CONFEDERATE VETERANS, NATHAN BEDFORD FORREST CAMP #215 v. CITY OF MEMPHIS ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 18-29-III        Ellen H. Lyle, Chancellor
_____

### No. M2018-01096-COA-R3-CV
_____

This is an action for injunctive relief filed by a historical-preservation society against the City of Memphis and a nonprofit corporation. Prior to filing its complaint, the society filed a petition for declaratory relief with the Tennessee Historical Commission that sought a declaration on the applicability of the Tennessee Heritage Protection Act of 2016 ("THPA") to two parks and related monuments conveyed by the City to the nonprofit. In the present action, the historical-preservation society requested a temporary injunction under the THPA to preserve the parks and monuments pending the Commission's final order. The trial court found the society could not prevail on the merits of its claim because the parks and monuments were no longer public property and, thus, were no longer subject to the THPA. Having determined that the historical-preservation society failed to assert a viable cause of action under the THPA, we affirm.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Douglas Edward Jones and John Isaac Harris, III, Nashville, Tennessee, for the appellant, Sons of Confederate Veterans, Nathan Bedford Forrest Camp 215.

Allan Jerome Wade, Jennifer Anne Sink, Brandy S. Parrish, and Bruce Anthony McMullen, Memphis, Tennessee, and Robert E. Cooper, Jr., Nashville, Tennessee, for the appellee, City of Memphis.

Christopher L. Vescovo and Alexander Hejoon Park, Memphis, Tennessee, and Jason Michael Pannu, Nashville, Tennessee, for the appellee, Memphis Greenspace, Inc.

H. Edward Phillip, III, Charles G. Blackard, III, Johnathan J. Pledger, III, and Wesley J. Ladner, III, for amicus curiae, James Kevin Bradley, Brooks Bradley, Thomas Jesse Bradley, Sidney Law, Walter W. Law, Jr., and Lee Millar.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

This is the second lawsuit filed by the Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 ("SCV") against the City of Memphis ("the City"). In the first action, SCV challenged the procedure by which the City renamed three parks that were named or dedicated in honor of those who fought for the Confederate States of America during the American Civil War. *Hayes v. City of Memphis*, No. W2014-01962-COA-R3-CV, 2015 WL 5000729, at *2 (Tenn. Ct. App. Aug. 21, 2015). The City changed the name of Nathan Bedford Forrest Park to "Health Sciences Park"; Confederate Park to "Memphis Park"; and Jefferson Davis Park to "Mississippi River Park."[1] *Id*. The trial court initially dismissed the action after finding that SCV lacked standing. *Id*. at *5. We reversed the dismissal on appeal, finding that SCV's collaboration with the City to install a name marker in Forrest Park gave it standing to challenge the resolution as a whole. *Id*. at *11–12. After remand, the trial court found the City acted within its authority when it passed the resolution and granted summary judgment in favor of the City. *Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 v. City of Memphis*, No. W2017-00665-COA-R3-CV, 2017 WL 4842336, at *3 (Tenn. Ct. App. Oct. 24, 2017). We affirmed the judgment on appeal. *Id*. at *13.

Shortly after the City renamed the parks, the Tennessee Historical Protection Act of 2013 ("the THPA") was enacted. *See* Tennessee Heritage Protection Act of 2013, Tenn. Pub. Acts, ch. 75 (codified at Tenn. Code Ann. § 4-1-412 (Supp. 2014)). The THPA provided that "[n]o statue, monument, memorial, nameplate, or plaque which has been erected for, or named or dedicated in honor of [the American Civil War] and is located on public property, may be relocated, removed, altered, renamed, rededicated, or

---

[1] According to the affidavit of the City's legislative research analyst, Brooke Hyman, the City authorized the erection of a statue of Nathan Bedford Forrest in Forrest Park in 1899. The Forrest Monument Association transferred ownership of the statue to the City in 1905.

otherwise disturbed," Tenn. Code Ann. § 4-1-412(a)(1) (Supp. 2014), without obtaining a waiver from the Tennessee Historical Commission,[2] *id*. § 412(d).

On August 18, 2016, the Memphis City Council ("the City Council") voted to "condemn"[3] the statue of Nathan Bedford Forrest ("the Forrest Statue") in Health Sciences Park, f/k/a Forrest Park, and authorized the sale and removal of the statue. *See* Memphis, Tenn., Ordinance 5592, §§ 1–2 (Aug. 18, 2015).

On March 7, 2016, the City filed a petition with the Commission requesting a waiver of the THPA to relocate the Forrest Statue to one of two battlefields where Forrest fought in the Civil War. At its October 21, 2016 meeting, the Commission denied the City's petition because "Forrest Park" was on the National Register of Historic Places, which listed the Forrest Statue as a "contributing feature." On November 4, 2016, the City filed a second petition with the Commission, asserting the Commission's criteria for granting or denying a waiver failed to comply with the Uniform Administrative Procedures Act ("UAPA"). The Commission effectively denied the petition when it failed to convene a contested case on the matter.[4]

On September 13, 2017, the City filed a third petition with the Commission. This time, the City requested a declaration that the THPA did not apply to the Forrest Statue because the statue was not "dedicated in honor of" the Civil War. SCV intervened in the matter, asserting a "unique interest" in the Forrest Statue based on this court's decision in *Hayes*. At its October 13, 2017 meeting, the Commission treated the City's petition as both a request for a declaration on the applicability of the THPA to the Forrest Statue and as a second waiver request. The Commission denied the waiver request and voted to convene a contested case on the issue of whether the THPA applied to the Forrest Statue.

---

[2] Section 412(d) provided, "Any entity exercising control of public property on which an item, structure or area described in subsection (a) is located may petition the Tennessee historical commission for a waiver to this section." Tenn. Code Ann. § 4-1-412(d) (Supp. 2014).

[3] Memphis Ordinance § 301 empowered the City Council to "condemn" and sell property upon a finding that the property was "unfit for service or use by the city." *See* Memphis, Tenn., Ordinance 5592 (Aug. 18, 2015). The City Council found the Forrest Statue was unfit for service or use by the City because it was "inconsistent with the purpose, intent and future land uses of the [applicable zoning overlay], which [was] to support the development and investment efforts of the State and other institutions in the medical district and surrounding neighborhoods." *Id*. § 1.

[4] The UAPA provides that an agency's failure to convene a contested case within 60 days constitutes a denial. Tenn. Code Ann. § 4-5-223(c).

On November 2, 2017, SCV filed a petition to intervene in the contested case, which the Administrative Law Judge ("ALJ") granted on November 28, 2017. *City of Memphis*, ADP No. 04.47-148176J, THC No. 17-0002, slip op. at 5 (Tenn. Hist. Comm. Nov. 28, 2018). In addition to pursuing the contested case, the City filed an action for judicial review of the Commission's decision to deny the City's second waiver request. *See City of Memphis v. Tenn. Hist. Comm.*, No. 17-1318-III (Davidson Cty. Ch. Ct. Dec. 11, 2017).

While it was seeking approval for relocating the Forrest Statue, the City began considering alternative options for removing the Forrest Statue and other Confederate monuments from the parks. In particular, the City considered offers from private entities to acquire the parks and monuments. According to the affidavit of Doug McGowen, the City's Chief Operating Officer, the City received at least six proposals but "rejected most of them because [the bidders] did not have the funds and could not . . . raise sufficient funds to relocate the monuments and maintain the parks on a going[-]forward basis." Eventually, the City entertained a viable proposal from Memphis Greenspace, Inc. ("Greenspace"), a nonprofit corporation led by Shelby County Commissioner Van Turner, Jr. Shortly thereafter, an "Implementation Plan" was presented to the City Council that proposed transferring the Parks to Greenspace "at reduced or no cost." *See* Memphis, Tenn., Ordinance 5665 (Dec. 20, 2017).

On December 15, 2017, the City and Greenspace executed several agreements to sell the parks with any related monuments to Greenspace for $1,000 each. The agreements included restrictive covenants that could be lifted only with the City's prior written approval and included an option agreement, giving the City the first right of refusal for any future transfer. On December 20, 2017, the City Council and Mayor adopted the Implementation Plan and authorized the Parks' transfer. *See* Memphis, Tenn., Ordinance 5665 (Dec. 20, 2017). Later that night, Greenspace removed the Forrest Statue from Health Sciences Park, a statue of Jefferson Davis from Memphis Park, and a bust of James Harvey Mathes from Memphis Park (collectively, "the Statues"). All three statues were stored by the City for one week before being moved to a secure, undisclosed location.

On January 8, 2018, in the wake of the sale and removal of the Statues, SCV attempted to intervene in the City's action for judicial review of the second waiver request ("Case No. 17-1318-III") by filing a petition for temporary restraining order and preliminary injunction in the Davidson County Chancery Court. SCV asserted standing based on its intervention in the pending contested case. The petition sought an injunction to preserve the parks and the Statues pending the conclusion of Case No. 17-1318-III and the contested case. However, on the same day, the City filed a notice of voluntary dismissal in Case No. 17-1318-III, and the ALJ dismissed the contested case as moot on the determination that the THPA does not apply.

- 4 -

On January 10, 2018, SCV and several individuals identified as the descendants of Nathan Bedford Forrest filed a petition with the Commission under the UAPA. The petition asserted seven "causes of action," including official misconduct under Tennessee Code Annotated § 39-16-402; criminal conspiracy under § 39-12-103; violation of the Family Burial Grounds Protection Act, Tenn. Code Ann. § 46-8-101 to -103; and violation of the THPA. The petition sought a declaration that the City's transfer was illegal and fraudulent and an order "for the return of the Statues unharmed to their original locations."

The next day, January 11, 2018, SCV instituted the present action by filing an unverified "Complaint for Injunction" in the Davidson County Chancery Court against the City and Greenspace (collectively, "Defendants"). The Complaint purported to assert a cause of action under § 412(d) of the THPA.[5] Additionally, SCV moved to consolidate both Chancery Court cases. Defendants opposed consolidation and argued that the trial court had no subject matter jurisdiction to issue an injunction under the THPA. They argued that the THPA no longer applied to the Parks or Statues once they were sold to a private entity and there was no pending waiver petition. At a hearing on January 25, 2018, SCV struck its motion to consolidate and announced it was proceeding with only its Complaint for Injunction in the present matter. Accordingly, the trial court dismissed Case No. 17-1318-III on January 29, 2018.

As a preliminary matter, the trial court found the allegations in SCV's Complaint met § 412(d)'s jurisdiction and standing requirements. The court found SCV had standing based on this court's decision in *Hayes* and the ALJ's decision in the City's contested-case hearing. The court found it had subject matter jurisdiction because SCV's January 10 Petition to the Commission qualified as an "action to enforce" the THPA, triggering the court's authority under § 412(d) to preserve a memorial's status. The court

---

[5] On March 11, 2016, the General Assembly amended the THPA to provide interested parties with the right to seek injunctive relief:

> Any person who can demonstrate a real interest in a memorial through aesthetic, architectural, cultural, economic, environmental, or historic injury, or through administrative involvement in the waiver process, has standing to seek injunctive relief in chancery court of Davidson County to enforce this section. To the extent necessary to preserve the status of any memorial prior to a final determination by the commission or the chancery court, the court may issue an injunction to preserve the memorial and any related public property pending a final ruling on any request for injunctive relief.

Tennessee Heritage Protection Act of 2016, Tenn. Pub. Acts, ch. 601, § 2 (codified as amended at Tenn. Code Ann. § 4-1-412(d) (Supp. 2016)).

found an injunction was warranted because the record raised questions over whether Greenspace was the City's alter ego. Accordingly, the court enjoined Defendants from selling, transferring, conveying, assigning, or relocating the Statues until the Commission entered a final order on SCV's Petition for Declaratory Order.[6]

On February 28, 2018, Defendants filed motions to alter or amend the trial court's temporary-injunction order. Defendants reiterated their assertion that the trial court lacked subject matter jurisdiction to award injunctive relief under § 412(d) of the THPA because there was no pending waiver petition. In the alternative, Defendants argued that SCV was entitled to only a temporary restraining order because Defendants were not given proper notice or an evidentiary hearing. In an order entered on April 10, 2018, the trial court granted the motions in part, finding it had jurisdiction due to the pending administrative matter and converting the temporary injunction to a restraining order pending a final hearing.

Before the final hearing, all three parties filed briefs and exhibits to support their respective positions. Defendants maintained that SCV had failed to show that a preliminary injunction was warranted under the traditional equitable factors[7] and argued that SCV lacked standing to seek an injunction under the THPA. SCV argued that the traditional equitable factors did not apply to injunctions sought under a statute and asserted standing based on its pending petition before the Commission.

The final hearing was held on May 14, 2018, and the trial court entered its final order on May 16, 2018. The court found that SCV could not prevail on the merits of its claim because the THPA only applied to memorials located on public property. The court further found that the THPA did not prohibit the sale or transfer of property and Defendants had presented undisputed evidence that the conveyance was otherwise legal

---

[6] On February 16, 2018, the Commission voted to convene a contested case on SCV's Petition. On April 5, 2018, however, SCV filed an Amended Petition for Declaratory Order. On May 18, 2018, the Commission voted to convene a contested case on the Amended Petition. A contested-case hearing was set for October 15, 2018. The matter's present status is unknown.

[7] When deciding whether to grant a preliminary injunction, trial courts generally consider four factors: "(1) the threat of irreparable harm to plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." *S. Cent. Tennessee R.R. Auth. v. Harakas*, 44 S.W.3d 912, 919 n.6 (Tenn. Ct. App. 2000) (quoting Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 4-3(l) (1999)).

and valid under Tennessee Code Annotated § 12-2-302.[8] SCV filed a motion for stay pending appeal, which the trial court granted on July 19, 2018. This appeal followed.

As restated, SCV raises three issues: (1) whether the trial court misinterpreted the THPA as permitting the City to transfer ownership of a "memorial" without first obtaining a waiver from the Commission; (2) whether the trial court erred by finding that the THPA does not extend to property removed in violation of the Act; and (3) whether the trial court erred by finding the transfer to Greenspace was legal and valid. Defendants maintain that the trial court did not have jurisdiction to consider SCV's request for an injunction under the THPA. We find the dispositive issue is whether the trial court had jurisdiction under § 412(d) to grant injunctive relief in an ancillary proceeding pending the entry of a final order by the Commission on a petition for declaratory order.

### STANDARD OF REVIEW

Subject matter jurisdiction concerns the authority of the court to hear a matter and cannot be waived. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). The lack of subject matter jurisdiction requires dismissal whenever it is demonstrated. *See* Tenn. R. Civ. P. 12.08 ("[W]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must dismiss the case without reaching the merits of the appeal. *See J.W. Kelly & Co. v. Conner*, 123 S.W. 622, 637 (Tenn. 1909); *see also First Am. Tr. Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001).

"A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts." *Benson v. Herbst*,

---

[8] Tennessee Code Annotated § 12-2-302 provides in relevant part:

In order to provide projects for a municipality and to enable the construction and financing thereof on lands owned by the municipality or by a not-for-profit corporation, but for no other purpose unless authorized by law, a municipality has the following powers and duties:

(1) Without limitation by reason of any other provisions of law, the power to sell and convey title to a not-for-profit corporation any land and any existing building thereon owned by the municipality for such consideration and upon such terms and conditions as in the judgment of the governing body are in the interests of the municipality[.]

240 S.W.3d 235, 239 (Tenn. Ct. App. 2007) (citing *Meighan*, 924 S.W.2d at 639; *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)). Subject matter jurisdiction hinges upon the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Thus, when a court's subject matter jurisdiction is challenged, the court must first ascertain the nature of the case and then determine "whether the Tennessee Constitution or the General Assembly has conferred on it the power to adjudicate cases of that sort." *Benson*, 240 S.W.3d at 239 (citations omitted). "Both determinations involve questions of law which this court reviews de novo without a presumption of correctness." *Id.* (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *Sw. Williamson Cty. Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 876 (Tenn. Ct. App. 2001)).

## ANALYSIS

The right to bring a cause of action in a Tennessee court exists for those who suffer a "legal injury, that is, a violation of his legal rights in some way, or a violation of law that affects him adversely." *Barnes v. Kyle*, 306 S.W.2d 1, 3 (Tenn. 1957). As a corollary, "the legislature has the inherent authority to set the parameters under which a cause of action accrues and is abolished[.]" *J.A.C. by & through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 521 (Tenn. Ct. App. 2016) (quoting *Webb v. Roberson*, No. W2012-01230-COA-R9CV, 2013 WL 1645713, at *16 (Tenn. Ct. App. Apr. 17, 2013)). Accordingly, when an asserted injury "involves a statutory violation, the court must determine whether the statute provides the plaintiff with a cause of action." *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002) (citing *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992)). "If the statute evidences a private right of action, we must then look to the remedy it provides." *Id.* Naturally, if the statute does not provide the plaintiff with a cause of action, the court has no authority to hear the matter or power to provide a remedy. *See Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) ("When a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject[-]matter jurisdiction and becomes a jurisdictional prerequisite."). Moreover, when "a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992). Likewise, "[w]hen venue is localized by statute, it becomes jurisdictional and is part of the court's authority to adjudicate the case before it." *Hayes v. State*, 341 S.W.3d 293, 296 (Tenn. Ct. App. 2009) (citing *Hawkins v. Tennessee Dep't of Correction*, 127 S.W.3d 749, 754 (Tenn. Ct. App. 2002)), *overruled on other grounds by Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362 (Tenn. 2014). In other words, when a complaint asserts an injury involving a statutory violation and the statute sets parameters under which a plaintiff must bring the action, the court's authority is controlled by the statute's language. *See Webb*, 2013 WL 1645713, at *16.

In its Complaint, SCV sought injunctive relief under Tennessee Code Annotated § 4-1-412(d) pending resolution of its administrative Petition for Declaratory Order. Therefore, SCV was not seeking injunctive relief to enforce a decision by the Commission; it was asking the trial court to grant injunctive relief in an ancillary action pending a final decision by the Commission. Accordingly, the threshold question is whether the General Assembly conferred on the Davidson County Chancery Court the power to adjudicate SCV's "ancillary action."

When construing a statute, our primary concern is to effect legislative intent without broadening or restricting its scope. *Womack*, 448 S.W.3d at 366. In doing so, "[w]e presume that every word in the statute has meaning and purpose" and must give full effect to the words' "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). We depart from this plain-meaning analysis only if the statute's language is ambiguous or conflicts with the General Assembly's obvious intention. *Id.* If the statutory language is ambiguous or creates a conflict, "we may consider matters other than the statutory language . . . to discern the legislature's intent." *Id.* That said, "non-codified external sources 'cannot provide a basis for departing from clear codified statutory provisions.'" *Id.* (quoting *Mills*, 360 S.W.3d at 368).

At the time of the trial court's final order, § 412 provided:

(b)(1) Except as otherwise provided in this section, no memorial . . . that is, or is located on, public property, may be removed, renamed, relocated, altered, rededicated, or otherwise disturbed or altered.

.     .     .

(d) Any person who can demonstrate a real interest in a memorial through aesthetic, architectural, cultural, economic, environmental, or historic injury, or through administrative involvement in the waiver process, has standing to seek injunctive relief in the chancery court of Davidson County to enforce this section. To the extent necessary to preserve the status of any memorial prior to a final determination by the commission or the chancery court, the court may issue an injunction to preserve the memorial and any related public property pending a final ruling on any request for injunctive relief.

Tenn. Code Ann. § 4-1-412(b)(1), (d) (Supp. 2017).[9]

The trial court ruled that SCV had standing based in part on our determination that SCV had standing in *Hayes* and in part on the ALJ's determination that SCV had standing to intervene in the City's contested case. We find both decisions are distinguishable from the present matter and that SCV has standing under § 412(d) to seek relief regarding the Forrest Statue but failed to demonstrate standing under § 412(d) to seek relief regarding the parks, the Davis statue, and the Mathes bust.

In *Hayes*, SCV asserted an interest in the park names based on its purported efforts to preserve and maintain Forrest Park and its funding and installation of various markers, statues, monuments, and educational panels in all three parks. *Hayes*, 2015 WL 5000729, at *11. In particular, SCV alleged that it collaborated with the City to fund a name marker for Forrest Park in 2012. *Id.* at *3. However, we found that SCV's alleged assistance in the preservation and maintenance of Forrest Park and its funding of monuments in all three parks could not "be construed as conferring a special interest in preservation of the park's name." *Id.* at *11. Nonetheless, we found the City's alleged collaboration with SCV on the installation of the name marker conferred a special interest in the marker and, thus, a special interest in the Forrest Park name. *Id.* at *11–12.

In the contested case, SCV's petition to intervene asserted that SCV had a special interest in the Forrest Statue because "[t]wo groups that merged into [SCV] engaged in extensive fundraising and commissioned the [Forrest Statue]." Noting that SCV had standing in *Hayes* based on its alleged funding of the Forrest Park name marker, the ALJ

---

[9] Section 412(d) was amended on May 21, 2018, to add, *inter alia*, the following emphasized language:

> Any entity, group, or individual who can demonstrate a real interest in a memorial through aesthetic, architectural, cultural, economic, environmental, or historic injury, *through petition for declaratory order*, or through administrative involvement in *either* the waiver *or complaint* process, has standing to seek injunctive or other relief in chancery court of Davidson County to enforce this section. To the extent necessary to preserve the status of any memorial prior to a final determination *on a waiver or complaint* by the commission, *administrative law judge*, or chancery court, the court *shall* issue *a restraining order or* injunction to preserve the memorial and any related public property pending a final ruling on any request for injunctive relief.

Act of May 21, 2018, Tenn. Pub. Acts, ch. 1033 (codified as amended at Tenn. Code Ann. § 4-1-412) (emphasis added). Because we find that the trial court applied the correct version of the statute, *see infra* n.15, we need not address whether the amended version of the statute would permit an "ancillary proceeding" pending a petition for declaratory order under the UAPA.

found that SCV had standing to intervene in the contested case because of its alleged funding of the Forrest Statue. *City of Memphis*, ADP No. 04.47-148176J, THC No. 17-0002, slip op. at 4 (Tenn. Hist. Comm. Nov. 28, 2018).

Significantly, both decisions were based solely on the allegations in SCV's pleadings. In *Hayes*, we were evaluating SCV's standing under a motion to dismiss standard, "taking the allegations of the plaintiffs' complaint as true." *Hayes*, 2015 WL 5000729, at *11.[10] Likewise, in the contested case, the ALJ took as true "the facts asserted by the prospective intervenors in their opening pleadings." *City of Memphis*, slip op. at 2. Under § 412(d), however, SCV bore the burden of "demonstrat[ing] a real interest in a memorial through aesthetic, architectural, cultural, economic, environmental, or historic injury, or through administrative involvement in the waiver process." SCV's unverified Complaint averred that it was "interested in" and "has worked to develop, promote and protect . . . all parks, monuments, and memorials in or surrounding the City of Memphis related in any way to the Civil War and/or the individuals commonly connected with the Confederate States or the State of Tennessee at that time." The Complaint also incorporated by reference SCV's petition in Case No. 17-1318-III and the affidavits filed in support thereof. The affidavits—one from SCV's counsel, Douglas E. Jones, and one from SCV member Lee Millar—both stated that SCV was involved in the waiver request proceedings, and Mr. Millar's affidavit stated that he was involved in the *Hayes* litigation. Neither of these statements, however, demonstrate an "aesthetic, architectural, cultural, economic, environmental, or historic injury," and it is undisputed that SCV never sought a waiver regarding the parks, the Davis statue, or the Mathes statue.[11] Thus, SCV "demonstrate[d] a real interest" only in the Forrest Statue and only because SCV was involved in the waiver process, which is statutorily identified as a ground for standing.[12]

---

[10] On remand, SCV supported its claims by presenting the affidavit of SCV member Lee Millar "to show that SCV and the City had actively collaborated in the placement of the granite marker at Forrest Park." *Sons of Confederate Veterans Nathan Bedford Forrest Camp #215*, 2017 WL 4842336, at *3.

[11] We also note that SCV waived its right to an injunction preserving the status of the parks. In SCV's Brief in Support of Preliminary Injunction, SCV requested a temporary injunction of the same scope initially granted by the trial court and later converted into a restraining order, i.e., an injunction preventing Defendants from selling, transferring, conveying, assigning, or relocating the statues.

[12] In the absence of statutory standing, other courts have found that similarly situated plaintiffs lacked standing to challenge the removal of Confederate statues. *See, e.g.*, *Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250, 252 (5th Cir. 2017) ("[B]y failing to show a constitutionally or otherwise legally protected interest in the monuments, they have also failed to show that any irreparable harm *to the*
(continued…)

Having found SCV met § 412(d)'s standing requirement as to the Forrest Statue, we next consider whether the trial court had the authority under § 412(d) to grant the relief SCV sought. Section 412(d) gave the trial court jurisdiction over actions "to enforce" the THPA and the power "to preserve the status of any memorial prior to a final determination by the commission or the chancery court."[13] Tenn. Code Ann. § 4-1-412(d) (Supp. 2016). We find SCV's Complaint was not an action "to enforce" the THPA and there was no "final determination" pending by the commission.

Construing § 412(d)'s language in light of the entire statute, we find that "final determination" refers to the Commission or Chancery Court's "final determination" on a petition for waiver rather than a "final decision" on an administrative petition for declaratory order under the UAPA. The UAPA provides that "[a]ny affected person may

---

*monuments*—even assuming such evidence—would constitute harm *to Appellants*."); *Gardner v. Mutz*, 360 F. Supp. 3d 1269, 1278 (M.D. Fla. 2019) ("The Court agrees . . . that Plaintiffs . . . cannot base their standing on their preferences for the preservation of Confederate memorials or the 'Southern perspective.'"); *Callan v. Fischer*, No. 3:16-CV-734-TBR, 2017 WL 4273106, at *4 (W.D. Ky. Sept. 26, 2017) ("Though there may be a great number of citizens who agree with Callan that the removal of the Monument was improper, mere generalized grievances . . . are insufficient to confer standing upon [plaintiff]."); *McMahon v. Fenves*, 323 F. Supp. 3d 874, 881 (W.D. Tex. 2018) ("[A] general action taken by the [defendant] to remove an inanimate object, which bears no relation to [plaintiff] other than a shared ideological interest, is not an action taken against [plaintiff]."); *Patterson v. Rawlings*, 287 F. Supp. 3d 632, 644 (N.D. Tex. 2018) (rejecting plaintiffs argument that it had standing due to "infringement of their political viewpoint communicated by the Monuments," which was "the same viewpoint that plaintiffs have long protected and promoted"); *McGraw v. City of New Orleans*, 215 So. 3d 319, 328–29 (La. Ct. App. 2017) ("Although [plaintiff] offered some evidence that the monuments might be damaged as a result of their removal, transportation, and storage, he has failed to establish that he would suffer irreparable harm in the event such injuries were to befall the monuments."), *appeal denied*, 217 So. 3d 342 (La. 2017); *Mississippi Div. of Sons of Confederate Veterans v. Univ. of Mississippi*, No. 2017-CA-00546-COA, 2018 WL 4204146, at *5 (Miss. Ct. App. Sept. 4, 2018) (finding plaintiff lacked standing to seek enforcement of statute protecting war memorials because the "matter affects the public interest and may be brought, if at all, only by the Attorney General or a district attorney"); *Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539, at *8 (Tex. Ct. App. Mar. 24, 2016) ("[E]ven if [plaintiffs] were descendants of Confederate veterans and had made public affirmations of the values of the military service of their ancestors in the Civil War, . . . thereby affirming the same American ideals expressed and commemorated in the statues, these facts would not be sufficient to state a particularized injury distinct from that of the general public. 'To the contrary, they merely signal an impetus for the democratic political participation in which [plaintiffs], like other members of the public, are free to engage through the Legislative and Executive branches.'" (quoting *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 176 (Tex. Ct. App. 2013))).

[13] Tenn. Code Ann. § 4-1-412(d) requires actions to enforce the THPA be brought in the Davidson County Chancery Court.

petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Tenn. Code Ann. § 4-5-223. When a contested case is convened, the agency, an administrative law judge, or a hearing officer may hear the case, after which it must issue a "*final order*." *Id*. § 314(a) to (b) (emphasis added). Thereafter, any "person who is aggrieved by a *final decision* in a contested case" may seek judicial review in the Davidson County Chancery Court. *Id*. § 322(a)(1) (emphasis added).

On the other hand, the THPA provided that the Commission must hear petitions for waiver at its regularly scheduled meetings, after which "the *final determination* of the [C]ommission shall be reduced to writing." Tenn. Code Ann. § 4-1-412(c)(5), (8)(B) (Supp. 2017) (emphasis added). Then, the petitioner or any party "who is aggrieved by the *final determination*" could seek judicial review in the Davidson County Chancery Court. *Id*. § 412(c)(9) (emphasis added). Thus, we conclude that, under the version of § 412(d) in effect at the time of the final order, the language authorizing an injunction "prior to a *final determination by the [C]ommission*," refers to a final determination on a petition for waiver rather than a final "order" or "decision" in a contested case under the UAPA.

SCV has consistently maintained that it filed the Complaint in the chancery court as an "ancillary proceeding." In its Brief in Support of Temporary Injunction, SCV described the issue before the trial court as whether the court had authority "to protect assets within the scope of the [THPA] until there is a final ruling either by the Commission and/or by a chancery court *should a private enforcement action be brought*." (Emphasis added). The City's waiver proceedings were terminated on January 8, 2018. Because there was neither a pending judicial action "to enforce" the THPA nor a pending waiver action, the trial court had no authority under § 412(d) to issue an "injunction to preserve the status" of the Forrest Statue.[14]

---

[14] Because SCV based its action solely on the authority granted by the THPA, we do not address whether the trial court may otherwise have had jurisdiction to grant injunctive relief prior to the exhaustion of administrative remedies. *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (finding that the power to review FTC orders "includes the traditional power [under the All Writs Act, 28 U.S.C. § 1651(a),] to issue injunctions to preserve the status quo while administrative proceedings are in progress and prevent impairment of the effective exercise of appellate jurisdiction."); *see also Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981) ("[I]f the court eventually will have jurisdiction of the substantive claim and an administrative tribunal has preliminary jurisdiction, the court has incidental equity jurisdiction to grant temporary relief to preserve the status quo pending the ripening of the claim for judicial action on its merits."); *Meighan*, 942 S.W.2d at 481 n.3 (noting that Tennessee's

(continued…)

Finally, even if § 412(d) conferred authority on the trial court to grant an injunction pending the Commission's final decision on a petition for declaratory order, the relief sought by SCV exceeded the scope of relief authorized under § 412(d). Section 412(d) granted the Davidson County Chancery Court the power to issue an injunction to "preserve the status of any memorial." As is relevant here, the THPA defined a "memorial" as "[a]ny statue . . . that has been erected for, named, or dedicated *on public property* in honor of any historic conflict, historic entity, historic event, historic figure, or historic organization." Tenn. Code Ann. § 4-1-412(a)(7)(B) (Supp. 2017) (emphasis added). By the time SCV sought a temporary injunction, the Forrest Statue was no longer on "public property" and, thus, was no longer a "memorial" whose status could be preserved. Accordingly, "[i]t would [have been] an idle gesture to enjoin that which . . . already occurred." *New Rivieria Arts Theatre v. State ex rel. Davis*, 412 S.W.2d 890, 895 (Tenn. 1967); *see also Barnes v. City of Hammond*, 276 So. 2d 746, 747 (La. Ct. App. 1973) (finding complaint for injunction to prevent the erection of a fountain and a plaque without approval from the Louisiana Historical Preservation and Cultural Commission was moot when the fountain had been erected and the plaque affixed); *cf. All. for Native Am. Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 339 (Tenn. Ct. App. 2005). ("It is well established that a suit brought to enjoin a particular act becomes moot once the act sought to be enjoined takes place." (citing *Miller v. Miller*, No. M2002-002775-COA-R3-CV, 2003 WL 22994305, at *4 (Tenn. Ct. App. Dec. 17, 2003))).

In summary, we find SCV failed to establish it had a right to bring, or the court the authority to consider, a cause of action under the THPA to enjoin temporarily Defendants' actions regarding the parks or the Statues pending the Commission's resolution of SCV's Petition for Declaratory Order.[15] We reiterate that SCV's Complaint did not "seek injunctive relief . . . to *enforce* [the THPA]." *See* Tenn. Code Ann. § 4-1-412(d) (emphasis added). Thus, our purpose is not to address the merits of SCV's underlying claim or whether, in an enforcement action, the trial court might have

---

All Writs Act gives state courts "essentially the same authority as [the federal All Writs Act] gives the federal courts." (citing Tenn. Code Ann. § 16-3-202 (1994))).

[15] SCV also contends that the trial court should have withheld its judgment pending passage of the 2018 amendments to the THPA. *See* Act of May 21, 2018, Tenn. Pub. Acts, ch. 1033 (codified as amended at Tenn. Code Ann. § 4-1-412). But SCV provides no legal authority for this assertion. The Tennessee Supreme Court has held that courts should apply the version of a statute "in effect at the time of the . . . court's . . . order." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 498 (Tenn. 2017). Here, the Chancery Court entered its final order on May 16, 2018, and the amendment went into effect on May 21, 2018. As a result, the Chancery Court applied the correct version of the statute.

jurisdiction under the THPA to enjoin a private entity from further disposing of memorials or issue a mandatory injunction to restore memorials already removed. Nor is our purpose "to sit in judgment upon the propriety, *vel non.*, of the City's political resolutions," *McGraw*, 215 So. 3d at 323, or to "pass on the wisdom of this local legislature's policy determination, [or] suggest how states and their respective political subdivisions should or should not memorialize, preserve, and acknowledge their distinct histories," *Monumental Task Committee, Inc.*, 678 F. App'x at 252. Rather, we are called upon to decide whether the trial court erred in denying SCV's request for a preliminary injunction. Having found SCV failed to show the THPA entitled it to an injunction pending the Commission's final order on its Petition for Declaratory Order, we affirm the trial court's judgment and dissolve the trial court's stay of its decision pending this appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed and the trial court's stay pending appeal is hereby dissolved. Costs of appeal are assessed against Sons of Confederate Veterans Nathan Bedford Forrest Camp #215.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 15 -